[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2010
JOHN LEY
CLERK

No. 09-16168
Non-Argument Calendar

_____

D. C. Docket No. 09-00035-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRYL SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 20, 2010)

Before TJOFLAT, EDMONDSON and MARTIN, Circuit Judges.

PER CURIAM:

Darryl Smith pled guilty to possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), pursuant to a plea agreement in which he reserved the right to appeal the district court's denial of his motion to suppress. We find no merit in his challenge to the district court's ruling and therefore affirm.

I.

Several weeks prior to May 9, 2009, Scott Heath, an officer of the Tallahassee, Florida Police Department cross-assigned to a DEA task force, installed a GPS data-logging device on Smith's Cadillac Escalade.[1] Smith was suspected of trafficking marijuana, obtaining the drug from California for distribution in Tallahassee and South Georgia, and was under the task force's surveillance. On May 8, a Friday, Heath decided to remove the GPS device from the Escalade, and at 3:45 a.m. the next morning, Officer Corbitt and another officer went to Smith's residence.[2] They found the Escalade parked in the driveway leading to the residence.[3] As they walked toward the Escalade from the street, they detected a strong odor of raw, green marijuana; the odor became stronger as they neared the vehicle. A drug dog was brought to the scene, and immediately alerted,

---

[1] Officer Christopher Corbitt participated in the installation of the device. He described it as a "slap-on" magnetic device; it was installed without entry into any enclosed area and did not damage the vehicle.

[2] The residence was one of several attached townhouses.

[3] The driveway was very short; the Escalade took up its full length.

indicating a large quantity of marijuana. At this point, the DEA took over and prepared an application for a search warrant.[4]

Meanwhile, at 11:50 a.m., a DEA agent observed Smith leaving his residence in the Escalade. A plan to have the vehicle stopped for a traffic violation was implemented. Christopher White, a Florida Department of Transportation officer attached to the DEA task force spotted the Escalade and followed it. After observing that the tinting of the Escalade's windows was illegal—it was too dark—he activated his vehicle's blue lights and signaled the Escalade to stop. Smith pulled over in front of a restaurant, parked and locked the Escalade, and fled the scene on foot. White apprehended him 150-200 yards away. He smelled of marijuana. White searched him for the keys to the Escalade but did not find them.

Once Smith was in custody, DEA agents secured his residence. Two women were inside. The agents swept the residence for the presence of others and in the process observed marijuana stems and seeds in the breakfast area, a large bag of marijuana on the floor of one room, and another bag of marijuana in an open closet in the same room.

Following his indictment, Smith moved the district court to suppress the

---

[4] Warrants for the Escalade and Smith's residence were obtained in the afternoon of May 9. The delay was due to the fact that the magistrate judge was not immediately available that Saturday morning.

marijuana evidence seized from his residence and the Escalade. He argued that the law enforcement officers conducted a warrantless search of the Escalade by retrieving the GPS device while the vehicle was parked in his driveway, and that they conducted a warrantless search of his residence prior to the issuance of the search warrant for the residence.

The district court, following an evidentiary hearing, denied Smith's motion. It found that the GPS device was installed in a public place; that, on May 9, the officers, while standing in the street, detected an "overwhelming smell of marijuana," which gave them probable cause to believe that there was marijuana Smith's residence; that the Escalade was properly stopped because of the window-tint violation; and that the agents subsequent warrantless entry into Smith's residence was irrelevant because the information contained in the affidavit accompanying the DEA's application for the search warrants came from independent sources—not from what the agents found in the residence.

## II.

In his brief on appeal, Smith argues that, in denying his motion to suppress, the district court erred in two respects. First, the warrantless installation of the GPS device on the Escalade violated his Fourth Amendment rights. Second, DEA agents lacked exigent circumstances to enter his residence without a warrant

following his arrest.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*. Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted). We may affirm the denial of a motion to suppress on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

> The Fourth Amendment's prohibition against unreasonable searches and seizures protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search. The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable.

*United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quotations omitted); *see also United States v. Espinosa-Orlando*, 704 F.2d 507, 512 (11th Cir. 1983) ("A legitimate expectation of privacy [must] be proven by factors beyond mere

possession, such as a right to exclude or a right to privacy.").

Although not applicable to a local police investigation conducted without federal involvement, *see United States v. Lehder-Rivas*, 955 F.2d 1510, 1522 (11th Cir. 1992), Federal Rule of Criminal Procedure 41(b)(4) establishes the federal procedure for obtaining a warrant to install a tracking device. The 2006 Amendment Notes to the rule clarify that "if the officers intend to install or use the device in a constitutionally protected area, they must obtain judicial approval to do so." *Id.* "If, on the other hand, the officers intend to install and use the device without implicating any Fourth Amendment rights, there is no need to obtain the warrant." *Id.* In *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (*en banc*), we held that the placement of an electronic tracking device on the exterior of the defendant's vehicle when it was parked in a public parking lot did not violate his Fourth Amendment rights. *Id.* at 255-56 ("[W]e hold that the minimal intrusion involved in the attachment of a beeper to Michael's van, parked in a public place, was justified so as to satisfy any of Michael's fourth amendment expectation of privacy concerns.").

Smith's argument that the installation of the GPS device violated his Fourth Amendment rights fails because the Escalade was parked in a place easily accessible to the public and was reachable from a public thoroughfare. Smith had

6

no reasonable expectation of privacy with respect to the exterior of the vehicle.

Searches and seizures inside a home without a search warrant are presumptively unreasonable. *Bervaldi*, 226 F.3d at 1262-63, citing *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). Under the independent source doctrine, however, the evidence seized is admissible if it was obtained from a lawful source, independent of the unreasonable or unlawful search. *United States v. Davis*, 313 F.3d 1300, 1303-04 (11th Cir. 2002) (subsequent warrant was supported by probable cause, not based on any information learned during prior unlawful search); *cf. United States v. Chaves*, 169 F.3d 687, 692-93 (11th Cir. 1999) (sufficient probable cause established for warrant, discounting information learned in prior unlawful search).

Smith has pointed to nothing in the affidavit supporting the search warrant for the residence that was learned from the agents in the presumptively illegal entry (pending the issuance of the warrant). Thus, he cannot overcome the application of the independent source doctrine. [5]

AFFIRMED.

---

[5] Having reached this holding, we need not consider Smith's argument that the DEA agents lacked the exigent circumstances necessary to justify their entry into the residence.