**UNITED STATES of America,
Plaintiff,**

v.

**Biniam ASGHEDOM, Defendant.**

**No. 12–501–LSC–TMP.**

United States District Court,
N.D. Alabama,
Southern Division.

Jan. 15, 2014.

Joyce White Vance, Gregory R. Dimler, U.S. Attorney's Office, U.S. Probation, United States Probation Office, USM, United States Marshal, Birmingham, AL, for Plaintiff.

Adam Anthony Bollaert, Steven D. Eversole, Eversole Law, Birmingham, AL, Rita M. Briles, Law Offices of Rita M. Briles, PC, Gardendale, AL, for Defendant.

### Order Accepting Report and Recommendation

**L. SCOTT COOGLER, District Judge.**

This court has reviewed the Report and Recommendation of the Honorable T. Michael Putnam, United States Magistrate Judge entered the 31st day of December, 2013 (Doc. 44) denying the Motions to Suppress filed by the Defendant on No-

vember 6, 2013 (Doc. 31) and on November 11, 2013 (Docs. 33, 34). In addition, this court has made a de novo determination of those findings and portions objected to by the Defendant.

It is Ordered that the Report and Recommendation of the Honorable T. Michael Putnam, United States Magistrate Judge entered the 31st day of December, 2013 be accepted as entered. This court adopts the report and recommendation as the Order of this court as if the same were set forth at this point *in extenso.* The Motions to Suppress filed by the Defendant (Docs. 31, 33, 34) are DENIED.

### SECOND REPORT AND RECOMMENDATION

**T. MICHAEL PUTNAM, United States Magistrate Judge.**

On December 5, 2013, the court conducted a suppression hearing with respect to defendant's motions filed on November 6 and 11, 2013. On November 6, 2013, the defendant filed his *pro se* "Motion for Hearing Objections to Issue of Tracking Device" (Doc. 31), followed on November 11 by counsel's motion for leave to file additional pretrial motions[1] and two additional motions to suppress evidence. (Docs. 33 & 34). The *pro se* motion and both new motions to suppress deal principally with the same issue: whether evidence obtained from a consent search of the defendant's vehicle should be suppressed because law enforcement officers were tracking the vehicle with a GPS tracking device attached to the vehicle without a warrant.[2] In effect, these mo-

---

[1] The motion for leave to file pretrial motions (Doc. 32) was effectively granted when the court conducted the suppression hearing on December 5, 2013. To be clear, however, the motion is GRANTED to the extent it seeks

authorization to file documents 31, 33, and 34.

[2] A second issue raised in document 33 seeks suppression of pole-camera surveillance of a residence on Page Avenue in Birmingham. As

tions are a prequel to the traffic stop and consent search addressed in the court's earlier report and recommendation arising from the defendant's first motion to suppress (Doc. 25). The motions seek to suppress the evidence seized in the consent search on the basis that the warrantless GPS tracker tainted the subsequent traffic stop and consent search.

### I. *Findings of Fact*

As a result of the suppression hearing and arguments of counsel, the court finds the following facts pertinent to the issue:

1. For some period of time prior to October 2010, Drug Enforcement Administration agents had been investigating the drug-trafficking activities of Artavis McGowan and others associated with a residence at 108 Page Avenue in Birmingham. Part of the investigation had focused on defendant, from whom agents had made two undercover purchases of cocaine.

2. On each occasion on which undercover buys were made, defendant was driving a black GMC pickup truck registered to Sharia Harris, a known associate of Artavis McGowan. On other occasions when agents had him under surveillance, defendant was always driving the same truck. It was usually parked at night at an apart-ment complex where defendant appeared to reside.

3. In late October or early November 2010, agents attached a self-contained, battery-powered GPS tracking device to the undercarriage of the truck as it was sitting the parking lot of the apartment complex at which defendant was believed to reside. About two weeks later, agents returned and replaced the battery on the device, again as the truck was parked in the parking lot. On neither occasion did the agents have a warrant authorizing them to do so.

4. While the tracking device was capable of continuous monitoring of the location of the truck, doing so depleted the battery very quickly. To preserve battery life, agents could remotely set a timer to report the location of the truck on intervals from every 30 minutes to every 12 hours, and they frequently set the interval at 8 to 12 hours during periods of the night when the truck was parked. The agents only spot checked the location at certain intervals, rather than maintain continuous tracking.

5. The tracking-device software also allowed agents to set up a "geofence" around certain locations, including the Page Avenue residence. A "geofence" is a perimeter set up around certain locations based on the GPS coordinates of the locations.

---

part of their investigation of drug activities of several people, agents obtain authorization to place a pole camera on a utility pole near the Page Avenue address. The pole camera recorded visual images only, not audio. It was used a form of surveillance of the area around the residence, to monitor the people coming and going from the residence. Defendant admits that he did not own or reside at the Page Avenue address. In any event, because the pole camera simply recorded what occurred on a public street, it involved no expectation of privacy the defendant can reasonably claim. Even if it could, the government represented at the hearing that none of the pole camera video has been preserved, and the government does not intend to offer any as evidence in the case due to the poor quality of the visual images at night. Suppression is therefore moot. Further, there is nothing exculpatory about the now-lost video because defendant admits visiting the Page Avenue address; therefore, he cannot argue that the absence of his image on any surveillance tape would be exculpatory. Insofar as defendant seeks suppression of video images or some other sanction for the government's failure to produce the video recordings in discovery, the motion is both MOOT and DENIED.

If the tracking device crossed into a fenced area, it would alert agents immediately, without regard to the time-interval settings on the device.

6. On December 1, 2010, agents were alerted by the GPS device that it had crossed into the geofence set up around the Page Avenue residence. Based on the alert, DEA agents and Birmingham police officers went to the area, and they spotted the black GMC truck parked at the Page Avenue residence. Due to the close proximity of houses in the area and a concern about being detected, agents could not maintain constant visual surveillance, but they drove by the residence periodically to see if the truck was still there.

7. The truck remained at the Page Avenue residence about 15 to 20 minutes before the GPS device alerted agents that it was moving again. Agents located the truck on Arkadelphia Road, a few blocks from Page Avenue. A marked Birmingham police cruiser was called in to follow the truck and make a traffic stop if a traffic violation was observed. After following the truck for about a quarter of a mile, the police officers observed it change lanes without signaling, and they initiated a traffic stop.[3]

## II. Conclusions of Law

As a result of the traffic stop and subsequent consent search of the truck, police found both cocaine and a large sum of money in the truck console. Defendant's fingerprints were on the plastic bags containing the cocaine. It is this evidence of cocaine, money, and fingerprints the defendant seeks to suppress, arguing that the use of a GPS tracking device without a court warrant constituted an illegal search in violation of his Fourth Amendment rights. He cites *United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), in support of his argument. He also contends that the evidence should be suppressed as a sanction for the government's failure to reveal in discovery that a tracking device was on the truck and used to locate it before the traffic stop.

In opposition to the motion, the government concedes that the defendant has standing to challenge the search of the truck, notwithstanding his lack of ownership, as he was a bailee with a possessory interest in it. Even so, the government asserts that the evidence seized from the truck is not due to be suppressed because (1) the law enforcement agents had a good faith basis for believing on December 1, 2010, that a warrant was not required for the use of the tracking device, and (2) the traffic stop made by the Birmingham police officers was an intervening event that attenuated any taint from the warrantless tracking device.[4] The government also denies that any sanction is necessary for discovery abuse, and that certainly suppression of evidence is too harsh a sanction, if one is warranted.

### a) Fourth Amendment

On January 23, 2012, more than a year after the defendant's traffic stop and arrest in this case, the Supreme Court announced its decision in *United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), in which it held that the warrantless placement of a GPS tracking device on a vehicle constituted a search

---

**3.** The court's findings of fact and conclusions of law with respect to the traffic stop and subsequent consent search are contained in the report and recommendation filed on October 21, 2013 (Doc. 29), and they will not be repeated here.

**4.** Although the government made the second argument at the suppression hearing, the court notes that it is not contained in the reply filed December 20, 2013. (Doc. 43).

for Fourth Amendment purposes.[5] *Jones* grounded its reasoning not on the *Katz* reasonable expectation of privacy analysis,[6] but on the older, common law prohibition against trespassing on private property. The Court noted, of course, that its case precedent does not recognize a privacy interest in a person's location on a public street. "This Court has to date not deviated from the understanding that mere visual observation does not constitute a search. See *Kyllo,* 533 U.S. at 31–32, 121 S.Ct. 2038. We accordingly held in *Knotts* that '[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' 460 U.S. at 281, 103 S.Ct. 1081." *United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 953, 181 L.Ed.2d 911 (2012). Thus, while the tracking device may not have violated Jones's reasonable expectation of privacy under *Katz,* that is not the only interest protected by the Fourth Amendment. It also protects traditional property interests against government trespasses. The Court wrote:

> The text of the Fourth Amendment reflects its close connection to property, since otherwise it would have referred simply to "the right of the people to be secure against unreasonable searches and seizures"; the phrase "in their persons, houses, papers, and effects" would have been superfluous.

Consistent with this understanding, our Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century. *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); Kerr, "The Fourth Amendment and New Technologies: Constitutional Myths and the Case for Caution," 102 Mich. L.Rev. 801, 816 (2004). Thus, in *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), we held that wiretaps attached to telephone wires on the public streets did not constitute a Fourth Amendment search because "[t]here was no entry of the houses or offices of the defendants," *id.* at 464, 48 S.Ct. 564.

*United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 949–50, 181 L.Ed.2d 911 (2012).

■ In the instant case, the warrantless attachment of a GPS tracking device on the black GMC pickup driven regularly by the defendant was a trespass to the property interests existing in the truck as personal property. Although the defendant was not the registered owner of the truck, the government concedes that he has standing to challenge the Fourth Amendment trespass as an authorized bailee of the truck with a right to possess it. *See United States v. Gibson,* 708 F.3d 1256, 1277 (11th Cir.2013) cert. denied, —— U.S. ——, 134 S.Ct. 342, 187 L.Ed.2d 238 (U.S.2013).[7] Further, conceding that the

---

**5.** Although a warrant had been issued for the placement of the tracking device in *Jones,* it had expired by the time agents actually attached the device to the vehicle.

**6.** *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**7.** Relying on the Fifth Circuit's decision in *United States v. Hernandez,* 647 F.3d 216 (5th Cir.2011), the Eleventh Circuit has tied the standing of non-owner users of vehicles to whether the defendant is challenging the *placement* of the tracking device on the vehi-

cle or the *use* of the tracking device to locate the vehicle thereafter. *See Gibson,* at 1277. A non-owner user of a vehicle has standing to challenge either the placement or the use of a tracking device on the vehicle during the time he possesses the vehicle. Thus, if a non-owner user possesses the vehicle at the time the tracking device is affixed to it, he has standing to challenge the placement of the device. Or, if he did not possess the vehicle at the time the device was affixed, he has standing to challenge the use of the device to monitor his location while he is driving the

affixing of the device to the truck was a "search" in the sense described in *Jones*—the government intruded into an area protected by the Fourth Amendment for the purpose of gaining information—the government argues nevertheless that the evidence seized is not due to be suppressed because the agents placing the device acted in the reasonable, good-faith belief that a warrant was not necessary. Citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the government contends that the underlying rationale for the exclusionary rule—deterrence of police misconduct—is missing when, as here, the law enforcement agents carried out the constitutional intrusion under the honest but mistaken belief that it was legal to do so. As another judge of this court has explained in a related case:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. *Herring*, 555 U.S. at 143, 129 S.Ct. 695. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *Id.*, at 144, 129 S.Ct. 695. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, *Leon, supra*, at 909, 104 S.Ct. 3405 (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, *Herring, supra*, at 137, 129 S.Ct. 695, the " 'deterrence rationale loses much of its force,' " and exclusion cannot "pay its way." See *Leon, supra*, at 919, 908, n.

6, 104 S.Ct. 3405 (quoting *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)).

*United States v. Figueroa–Cruz*, 914 F.Supp.2d 1250, 1267 (N.D.Ala.2012). Reliance on pre-existing circuit precedent evidences the good faith of law enforcement officials. Where police act in congruence with binding case law, it cannot be said that they acted with a reckless or deliberate disregard of Fourth Amendment rights, even though such case law may later be called into question or reversed. Thus,

> "[W]hen the police conduct a search in objectively reasonable reliance on binding judicial precedent" that was later reversed, there is no wrongdoing to deter and thus no justification for suppression of evidence. [*Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2427–28, 180 L.Ed.2d 285 (2011) ]; see *U.S. v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir.2012).

*United States v. Rosas–Illescas*, 872 F.Supp.2d 1320, 1326–27 (N.D.Ala.2012).

■ During the time frame from late October 2010, when the GPS device was attached to the truck, to December 1, 2010, when it was used to locate the truck near 108 Page Avenue, law enforcement agents had a *reasonable* good-faith belief that no warrant was necessary for affixing and using a tracking device on a vehicle in a public place.[8] Prior to *Jones*, circuit precedent clearly dispensed with the need for such a warrant. For example, as early as *United States v. Michael*, 645 F.2d 252 (5th Cir.1981) (*en banc*), the old Fifth

---

vehicle. In this case, the distinction is unimportant because defendant Asghedom was in possession of the vehicle at all times.

**8.** "There is no question that as of September 20th, 2011, binding Eleventh Circuit precedent clearly established that the attachment of

a 'beeper' tracking device to monitor the movement of a defendant's vehicle violated no constitutional right." *United States v. Figueroa–Cruz*, 914 F.Supp.2d 1250, 1269 (N.D.Ala. 2012).

Circuit held "that reasonable suspicion is adequate to support warrantless beeper installation [on the exterior of a vehicle]." [9] *Id.* at 257; *see United States v. Rosas–Illescas,* 872 F.Supp.2d 1320, 1327 (N.D.Ala.2012). As recently as July 2010, just three months before the agents in this case affixed the GPS tracker, the Eleventh Circuit wrote in an unpublished opinion that,

> In *United States v. Michael,* 645 F.2d 252 (5th Cir.1981) (*en banc*), we held that the placement of an electronic tracking device on the exterior of the defendant's vehicle when it was parked in a public parking lot did not violate his Fourth Amendment rights. *Id.* at 255–56 ("[W]e hold that the minimal intrusion involved in the attachment of a beeper to Michael's van, parked in a public place, was justified so as to satisfy any of Michael's fourth amendment expectation of privacy concerns.").
> Smith's argument that the installation of the GPS device violated his Fourth Amendment rights fails because the Escalade was parked in a place easily accessible to the public and was reachable from a public thoroughfare. Smith had no reasonable expectation of privacy with respect to the exterior of the vehicle.

*United States v. Smith,* 387 Fed.Appx. 918, 920–21 (11th Cir.2010) (*per curiam*) (unpublished). The court observed that although Federal Rule of Criminal Procedure 41(b)(4) has provided a procedure for obtaining a warrant for a tracking device December 1, 2006, such a warrant is necessary only when "the officers intend to install or use the device in a constitutionally protected area." Because the exterior of a vehicle on a public street was not regarded

as a constitutionally protected area under Eleventh Circuit precedent until the *Jones* decision in 2012, the court held in *Smith* that no warrant was required. *See United States v. Dooley,* 2013 WL 2548969, *2 (N.D.Ga. June 10, 2013).

Most important, on December 23, 2013, the Eleventh Circuit applied the *Leon/Davis* good faith exception to a warrantless GPS device in the published opinion in *United States v. Smith,* 741 F.3d 1211 (11th Cir.2013), where the court of appeals wrote:

> In asking us to reverse the denial of his motion to suppress, Smith invokes *United States v. Jones,* — U.S. —, —, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012), which held-after the events at issue in this case-that for Fourth Amendment purposes officers conducted a "search" when they installed a GPS tracker on a suspect's vehicle. Although the Court concluded that such GPS searches implicate the Fourth Amendment, it had "no occasion to consider" whether a warrantless GPS search might ever be reasonable. 132 S.Ct. at 954. In asserting that the warrantless searches violated his Fourth Amendment rights in this case, and in claiming therefore that evidence seized in reliance on those searches should be suppressed, Smith would have us resolve the difficult constitutional question left open in *Jones.* We decline Smith's invitation, however, because even if the Fourth Amendment requires an officer to secure a warrant before installing a GPS tracker, the *Davis* good-faith exception plainly would suspend the operation of the exclusionary rule in this case. The officers here undeniably relied on the same kind of then-binding, but sub-

---

9. Having made two undercover buys of cocaine from the defendant while he was driving the black GMC truck, there is little doubt that agents had at least articulable suspicion to support attaching a tracking device to it.

sequently overruled, appellate precedent that was at issue in *Davis.* When law enforcement officers attached the trackers in this case, in January 2011, our precedent specifically authorized officers to install "an electronic tracking device" on a suspect's vehicle upon a showing of reasonable suspicion. *United States v. Michael,* 645 F.2d 252, 254 (5th Cir. 1981) (*en banc*). Under *Michael,* the fact of trespass did not automatically trigger constitutional concerns. *See id.* at 258 n. 14 ("That the beeper required the DEA agents to make a technical trespass unlike the pen register in *Smith* is not controlling. This slight physical intrusion is insignificant if it infringes no privacy interest."). Rather, our Fourth Amendment analysis turned largely on the notion that "an individual's expectation of privacy in his automobile is less than in other property." *Id.* at 257.

*United States v. Smith,* 741 F.3d 1211, 1219–20 (11th Cir.2013). This case confirms what was foreshadowed in the unpublished *Smith* opinion, that circuit precedent was clear and well-settled enough prior to *Jones* that law enforcement officers' failure to secure a warrant to install a GPS tracking device was believed to be lawful. That good faith belief prevents the application of the exclusionary rule to evidence seized under the honest but mistaken belief that no warrant was needed for a GPS tracking device on the exterior of a vehicle.

Defendant Asghedom relies on the Third Circuit opinion in *United States v. Katzin,* 732 F.3d 187 (3d Cir.2013), for the proposition that the *Leon* good-faith exception to the exclusionary rule does not apply to warrantless GPS trackers. The court in *Katzin* reasoned that "*Davis* [*v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011)] extends good faith protection only to acts that are explicitly

sanctioned by clear and well-settled precedent, and neither *Knotts* nor *Karo* sanction the type of intrusion at issue in this case," and, therefore, "law enforcement's reliance on the beeper cases, standing on its own, cannot sufficiently insulates the GPS search in this case from the exclusionary rule." *United States v. Katzin,* 732 F.3d 187, 207–08 (3d Cir.2013). In the Eleventh Circuit, however, the court of appeals has extended the *Leon/Davis* good faith exception explicitly to GPS devices. *See United States v. Smith,* 741 F.3d 1211, 1219–20 (11th Cir.2013). The court in *Smith* rejected the argument accepted in *Katzin,* that GPS devices are so different from the "beeper" at issue in *Michael* that cases dealing with "beepers" were not sufficiently clear to settle the question as to GPS trackers. "We think Smith asks us to draw too fine a distinction [between 'beepers' and GPS devices]. Because a GPS device is an 'electronic tracking device,' the officers in this case 'followed the Eleventh Circuit's ... precedent to the letter' when they installed the trackers on Smith's vehicles with reasonable suspicion." *United States v. Smith,* 741 F.3d 1211, 1222 (11th Cir.2013); *see also United States v. Andres,* 703 F.3d 828, 835 (5th Cir.2013) (holding that functionality of GPS trackers and "beepers" was so similar that agents' reliance on precedent in *Michael* was "objectively reasonable"); *United States v. Sparks,* 711 F.3d 58, 64–66 (1st Cir.2013) (recognizing that the *Davis* good-faith exception applies to warrantless placement of GPS device in reliance upon earlier "beeper" cases); *United States v. Pineda–Moreno,* 688 F.3d 1087, 1090 (9th Cir.2012). The precedent in *Smith,* not the Third Circuit, is binding on this court.

Thus, as of October 2010 through December 1, 2010, both Eleventh Circuit precedent and case law from other circuits uniformly held that the use of a GPS

tracker did not necessitate a warrant. Under *Davis,* law enforcement agents' reliance on this "clear and well-established precedent" was reasonable, so that the *Leon/Davis* good faith exception to the exclusionary rule salvages the legality of the evidence seized in this case. Insofar as the defendant moves under the Fourth Amendment to suppress the cocaine, money, and fingerprints found in his truck on the basis that agents attached a GPS device to his truck without a warrant, prior to *Jones,* the motion should be denied.

### b) *Rule 16 Discovery*

Asghedom also argues that the evidence found in his truck should be suppressed because the government failed to reveal to him, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, that a GPS tracking device had been attached to his truck and that it was what caused agents to follow him on December 1, 2010, leading to the traffic stop and subsequent consent search. Rule 16(a)(1)(E) requires:

> (E) *Documents and Objects.* Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii) the item was obtained from or belongs to the defendant.

Rule 16(d)(2) provides with respect to failures to comply with the discovery obligation:

> (2) *Failure to Comply.* If a party fails to comply with this rule, the court may:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> (B) grant a continuance;
>
> (C) prohibit that party from introducing the undisclosed evidence; or
>
> (D) enter any other order that is just under the circumstances.

First, it is not at all clear that the tracking "data" were discoverable under Rule 16. Defendant has not attempted to show how such tracking data are material to his defense. Certainly, it would not appear that he needs the data to establish his whereabouts at the time of the traffic stop, and any data related to other dates and times would be immaterial to the charge that he possessed cocaine with the intent to distribute it on December 1, 2010. Further, the government has made clear that it does not intent to offer the data (if they exist) as evidence in its case-in-chief. Third, the court has difficulty understanding how GPS tracking data can be considered something obtained from or belonging to the defendant. While certainly the data (if they exist) would report the location of his truck at various times, the information is not something "obtained" from or "belonging" to the defendant any more than someone's observation of the truck's location on a public street. If agents physically follow and watch a particular vehicle, their knowledge of its movement is not something "obtained" from the defendant or belonging to the defendant in the sense those terms are used in Rule 16. As there is no reasonable expectation of privacy on a public street, *see Jones, supra,* at ——, 132 S.Ct. at 953, a GPS tracking record of movement on public streets is not an intrusion that takes something from the defendant; the information is merely a record of events occurring in public. Likewise, there are no

ownership rights in a person's movement, such that knowledge of another person's movement "belongs" to that person. It is not clear, therefore, that GPS tracking data that are not going to be offered as evidence by the government are discoverable under any of the three scenarios envisioned by the rule.

■ Assuming without deciding that the government was obligated to disclose the "data" obtained from the GPS tracking device, it is not clear that any of the first three possible remedies is available or necessary. Testimony at the suppression hearing suggested that the government no longer has the actual tracking data from the device. However, to the extent any such GPS tracking data still exist, the government is ORDERED to produce them to the defendant for inspection and copying within seven (7) days.[10] Because it is hard to see how the tracking data are material to the preparation of the defense, there is no need for a continuance of the trial for the defendant to review them. Again, the government has made clear that it does not intend to offer any evidence related to or secured from the GPS tracking device; thus there is no need to prohibit the use of such evidence.

The only remaining remedial provision under Rule 16(d)(2) is for the court to "enter any other order that is just under the circumstances." Defendant contends that order should be one suppressing the evidence seized from his truck during the traffic stop. The court disagrees, principally because the defendant is unable to show how the government's failure to disclose the existence of the GPS tracking device earlier (of course, defendant has known about it since the first suppression hearing on October 2, 2013) caused any prejudice to his defense. For the reasons already addressed, the fact of the GPS tracker and the data it produced do not appear to be the type of evidence the defendant himself would offer at trial. It certainly is not exculpatory in any sense, but, rather, confirms his presence at 108 Page Avenue and the fact that he is the person from who agents made two undercover cocaine buys prior to December 1, 2013. Because the government is not planning to offer the evidence, defendant does not need time to prepare to rebut or explain it. After the information came to light at the October 2 suppression hearing, defendant has filed additional motions to suppress and has obtained a hearing at which to set forth the basis of any prejudice. He simply has not articulated how the government's failure to reveal this information before the October 2 hearing caused him prejudicial harm. Absent some showing of prejudice to his substantive rights, suppression of the evidence obtained as a result of a consent search during the traffic stop (which the court previously has determined was "objectively reasonable" and fully consensual) as a sanction for violation of the discovery obligations of Rule 16 is unwarranted.

*Conclusion and Recommendation*

Based on the foregoing findings of fact and conclusions of law proposed to the court, the magistrate judge recommends that all three motions to suppress filed by the defendant (Docs. 31, 33, and 34) should be DENIED.

---

**10.** While the issue discussed here was raised in a motion to suppress, with respect to which the magistrate judge is required to file a report and recommendation under 28 U.S.C. § 636(b)(1)(B), whether additional pretrial discovery should be ordered is within the magistrate judge's authority to "hear and determine" under § 636(b)(1)(A). For this reason, although a recommendation is made with respect to the suppression issue, the undersigned can and does enter the order stated above in text for additional Rule 16 discovery.

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.