*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 13-1623

BRIAN SCOTT FISHER,
  *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 2:10-cr-00028-1—R. Allan Edgar, District Judge.

Decided and Filed:  March 7, 2014[*]

Before:  GILMAN, COOK, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

———————————

**ON BRIEF:** Paul A. Peterson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Negaunee, Michigan, for Appellant. Sally J. Berens, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  The question presented on appeal is whether the evidence derived from a warrantless GPS automobile search should be excluded or whether the good-faith exception to the warrant requirement applies.  We determine that the police had an objectively reasonable good-faith belief that their conduct was lawful and was sanctioned by then binding appellate precedent, and thus, the exclusionary rule does not apply.  We therefore **AFFIRM** the denial of Fisher's motion to suppress.

———————————

[*]This decision was originally issued as an "unpublished decision" filed on March 7, 2014.  The court has now designated the opinion as one recommended for full-text publication.

1

## I.   FACTS

In May of 2010, the Drug Enforcement Agency and members of the Upper Peninsula Substance Enforcement Team received information from a confidential informant that Brian Scott Fisher ("Fisher") was involved in the sale of cocaine and had suppliers in Lansing, Michigan, and Chicago, Illinois. The informant also revealed that Fisher would drive to Lansing, Michigan, in a white four-door Oldsmobile on May 28, 2010, and would return to Escanaba, Michigan, the following day with a shipment of drugs. On May 28, 2010, police attached a Global Positioning System ("GPS") unit[1] to the bumper of Fisher's car. The battery-operated GPS provided the vehicle's location when contacted by a telephone signal so long as the GPS was within range of a cell phone tower. Relying on a combination of GPS monitoring and physical surveillance, the police confirmed that Fisher traveled to Lansing and later returned to Escanaba.

The next month, in early June 2010, the confidential informant again told police about an impending drug run, this time to Chicago, Illinois. The informant described the vehicle that would be used, who would be traveling, and the dates of the trip. The events that unfolded corroborated the informant's tip. Officers observed Fisher leave Escanaba on June 11, 2010. Using ten to twelve vehicles, the police followed Fisher until he arrived in Chicago. The GPS then indicated that Fisher's vehicle stopped at a location in Plainfield, Illinois. This was corroborated by physical surveillance. When Fisher's vehicle left the Chicago area several days later, on June 14, 2010, the GPS informed police that the vehicle had started traveling northbound. While the GPS does have a "live track" feature, which allows the police to track the vehicle in real time, it was used sparingly because of the GPS's limited battery life. Once Fisher entered Michigan, he was stopped. After a trained narcotics dog named "Rambo" alerted to the presence of drugs in the vehicle, police conducted a warrantless search and discovered three ounces of cocaine.

---

[1] The GPS unit used in this case was the Guardian 811. The unit can be affixed to an automobile in approximately 30 seconds and is held in place using magnets. The unit's battery lasts one to ten days depending on use. The unit offers a "live track" function that provides, as the name suggests, information regarding the vehicle's location, speed, and direction of travel. This information is stored on the GPS unit or can be transmitted by cell signal. Apart from the "live track function," the unit can also notify the police when the vehicle crosses a "fence" and thereby enters or exits a predetermined geographic area.

Police arrested Fisher for possession with intent to deliver cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Following his indictment, Fisher moved to suppress the evidence seized from his vehicle, arguing that the warrantless use of the GPS device violated the Fourth Amendment. After holding a hearing, the magistrate judge determined in a written report on January 11, 2011, that the vehicle exception to the warrant requirement applied and that there was probable cause to search the vehicle, referencing the information acquired from the confidential informant, the physical surveillance, and the GPS unit. The district court adopted the magistrate's recommendation and denied the motion to suppress on February 11, 2011. Fisher subsequently entered a guilty plea conditional upon the right to appeal the district court's denial of his motion to suppress evidence, and the district court sentenced him to 33 months of imprisonment.

While Fisher's appeal was pending, the Supreme Court decided *United States v. Jones*, which held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" 132 S. Ct. 945, 949 (2012). In light of *Jones*, the parties jointly moved to remand the appeal to the district court. This court granted the motion to remand on April 3, 2012, and vacated Fisher's judgment of conviction. *See United States v. Buford*, 632 F.3d 264, 269 (6th Cir. 2011) (internal quotation marks omitted) ("It is firmly established that a decision of the Supreme Court declaring a new constitutional rule applies to all similar cases pending on direct review.") On remand, Fisher renewed his motion to suppress, again arguing that the use of the GPS violated the Fourth Amendment and that any evidence resulting from the illegal search should be excluded. Following briefing and a hearing, at which several officers testified that they had received advice from prosecutors and training from the Drug Enforcement Agency and other police agencies indicating that the warrantless use of GPS was permitted, the magistrate recommended that the good-faith exception to the exclusionary rule should be applied. The district court adopted the recommendation and denied the motion to suppress on January 18, 2013. As Fisher did not wish to withdraw his conditional guilty

plea, the district court resentenced him to time served. Fisher appeals the denial of his motion to suppress.

## II.   ANALYSIS

"The grant or denial of a motion to suppress is a mixed question of fact and law. On appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007) (citation omitted).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." In *Jones*, the Supreme Court, relying on common-law trespass doctrine, determined that the use of a GPS to monitor a vehicle constituted a search under the Fourth Amendment.[2] *Jones*, 132 S. Ct. at 949. The question presented on appeal is whether the good-faith exception to the exclusionary rule applies where the police rely on then-binding precedent that upholds the constitutionality of a police practice that is later overruled by the Supreme Court. As suppression in such circumstances would neither deter police misconduct nor improve public safety, and consistent with *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011), we find that the good-faith exception applies.

### A.   *The Exclusionary Rule*

Evidence that has been obtained in violation of the Fourth Amendment may be subject to exclusion at trial. As the Supreme Court has made clear, however, "[e]xclusion is not a personal constitutional right" but is intended "to deter future Fourth Amendment violations." *Davis*, 131 S. Ct. at 2426. Because "[e]xclusion exacts a heavy toll on both the judicial system and society at large," not all violations of the Fourth Amendment result in the exclusion of evidence. *Id.* at 2427. "[E]xclusion has always been our *last resort*, not our first impulse." *Herring v. United States*, 129 S. Ct. 695, 700 (2009) (internal citation and quotation marks omitted) (emphasis added). To assess

---

[2]The Court did not consider whether the search would have been considered "reasonable" if supported by reasonable suspicion or probable cause because this was not raised by the Government before the lower court. *Jones*, 132 S. Ct. at 954.

No. 13-1623        *United States v. Fisher*                                                          Page 5

whether exclusion is demanded, a "rigorous weighing of [] costs and deterrence benefits" is necessary. *Davis*, 131 S. Ct. at 2427. In particular, because the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct, the cost-benefit analysis should focus on the "flagrancy of the police misconduct" and on whether the police misconduct was "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 129 S. Ct. at 701–02. When police act in good faith, however, "conduct[ing] a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Davis*, 131 S. Ct. at 2434.

**B.  *Officers Acted in Good Faith When They Utilized the GPS Tracker***

At the time of the disputed GPS surveillance, the Supreme Court had strongly indicated, and the Sixth Circuit and three other circuits had held, that the warrantless use of electronic tracking devices was permissible. Given this uniform authority, the police conduct here was in good faith.

Before turning to the relevant Sixth Circuit case law, we briefly review the pre-*Jones* Supreme Court precedent. In *United States v. Knotts*, 103 S. Ct. 1081, 1087 (1983), the Supreme Court held that the *monitoring* of an electronic tracking device, such as a "beeper," that had been installed on a container with the consent of the then-owner, did not constitute a search in violation of the Fourth Amendment. "Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." *Id.* at 1086. The next year in *United States v. Karo*, 104 S. Ct. 3296, 3301–02 (1984), the Supreme Court further elaborated, in relevant part, that the *installation* of a beeper in a container with the *consent* of the original owner did not violate the Fourth Amendment when the container was later delivered to a buyer who had no knowledge of the presence of the beeper. Importantly, the Court in its analysis discounted the relevance of the physical trespass that occurred when the beeper was installed, indicating that "a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated." *Id.* at 3302. Taken together,

*Knotts* and *Karo* strongly suggested that the warrantless installation and monitoring of a tracking device to follow an individual in public spaces was permissible.

Some appellate courts have taken this a step further, holding that *Knotts* and *Karo* actually authorized the warrantless use of GPS devices and therefore are themselves a basis for asserting the good-faith exception. *See United States v. Aguilar*, 737 F.3d 251, 261–62 (2d Cir. 2013) (finding that police could reasonably have concluded, pre-*Jones* and based on *Knotts* and *Karo*, that a warrant was not needed to place a GPS device on a vehicle and that the good-faith exception to the warrant rule applied). We need not go that far here because at the time of the search the Sixth Circuit had already approved the police conduct.

In *United States v. Forest*, 355 F.3d 942 (6th Cir. 2004),[3] police officers dialed a suspected drug trafficker's phone, without allowing it to ring, and tracked him on public roads by identifying which cell phone towers were being "pinged." This court upheld the practice, finding that the police did not conduct a search under the Fourth Amendment when they obtained the cell-site data and thereby identified the defendant's location. *Id.* at 951–52. As this court explained, "[the defendant] had no legitimate expectation of privacy in the cell-site data because the DEA agents could have obtained the same information by following Garner's car." *Id.* at 951. Our decision in *Forest* was consistent with this court's prior determination in *United States v. Cassity*, 720 F.2d 451, 455 (6th Cir. 1983) (indicating that beepers may be used to track individuals in public places but not in private areas like homes), *vacated*, 468 U.S. 1212 (1984).

While *Forest* and *Cassity* dealt with cell phones and beepers, not GPS, the cases clearly indicated that the warrantless use of electronic tracking devices was permissible.[4]

---

[3] The judgment of sentence in *Forest*, was later vacated by *Garner v. United States*, 543 U.S. 1100 (2005), and remanded for further consideration in light of *United States v. Booker*, 125 S. Ct. 738, 756 (2005) (holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"). The Supreme Court's one paragraph decision in *Garner* did not address the Fourth Amendment concerns or the overarching judgment in *Forest*, which therefore remained binding authority.

[4] The only other meaningful difference between *Forest* and the present case is the absence of a physical trespass. In *Forest*, the police did not have to attach the tracking device to the defendant's vehicle. But as previously discussed, prior to *Jones*, the Supreme Court's jurisprudence had downplayed the relevance of a physical trespass. "[A] physical trespass is only marginally relevant to the question of

Put differently, our precedent on the constitutionality of warrantless tracking was unequivocal. *See Buford*, 632 F.3d at 276 n.9. Obviously, the technological device in the present case is not exactly the same as that used in *Forest*, but the effect it has is nearly identical: police used the defendant's cell phone in *Forest* like a GPS tracker to identify the defendant's location. *See Forest*, 355 F.3d at 948 ("[Defendant] contends that the DEA's use of cell-site data effectively turned his cellular phone into a tracking device, violating his rights under . . . the Fourth Amendment."). This is again precisely what the police did here. Officers heavily relied on physical surveillance to follow Fisher and used the GPS device to sporadically identify the defendant's location or to be informed when he had crossed certain preset geographic boundaries.

None of this is to discount the *possible* differences between GPS devices and their technological predecessors. GPS devices clearly have capabilities that older tracking devices lack. But these differences are not relevant to the present case, and "[i]nsofar as respondent's complaint appears to be simply that scientific devices such as the beeper enabled police to be more effective in detecting crime, it simply has no constitutional foundation." *Knotts,* 103 S. Ct. at 1086; *see also United States v. Cuevas-Perez*, 640 F.3d 272, 278 (7th Cir. 2011) (Flaum, J., concurring) ("A GPS device works differently than a beeper, but nothing inheres in the technology to take it out of *Knotts's* holding."), *vacated*, 132 S. Ct. 1534 (2012). Thus, although a GPS device could be used as part of a more extensive governmental surveillance program that would be sufficiently distinguishable to make prior precedent inapposite, the facts of the present case are a far cry from that Orwellian vision.

Other circuits have similarly held that pre-*Jones* cases, authorizing the use of tracking devices like beepers, provided binding authority for the warrantless use of GPS trackers. As such, officers relying on these earlier cases were still within the scope of the good-faith safe harbor, even though the technology described by the cases was not exactly the same. *See United States v. Ransfer*, -- F.3d --, 2014 WL 292379, *5–7 (11th Cir. Jan. 28, 2014) (holding that prior cases permitting the warrantless use of a beeper

---

whether the Fourth Amendment has been violated." *Karo*, 104 S. Ct. at 3302. A reasonable officer would not have been able to anticipate this shift in the Supreme Court's Fourth Amendment jurisprudence.

constituted binding precedent for purpose of warrantless GPS tracking); *United States v. Smith*, 741 F.3d 1211, 1218–25 (11th Cir. 2013) (similar); *United States v. Sparks*, 711 F.3d 58, 66–67 (1st Cir. 2013) (similar); *United States v. Andres*, 703 F.3d 828, 834–35 (5th Cir. 2013) (similar); *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090–91 (9th Cir. 2012) (similar). Our holding today is thus consistent with our sister circuits.

We also observe that at the time the GPS tracking in the present case took place, every other circuit to have considered the issue had uniformly upheld the constitutionality of the practice.[5] More specifically, the Seventh and Ninth Circuits had determined that use of a GPS tracker did not require a warrant, and the Eighth Circuit had indicated that use of a GPS tracker without a warrant was permissible for a reasonable period of time so long as the police have "reasonable suspicion." *See United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), *vacated*, 132 S. Ct. 1533 (2012); *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010); *United States v. Garcia*, 474 F.3d 994, 997–99 (7th Cir. 2007); *United States v. McIver*, 186 F.3d 1119, 1126–28 (9th Cir. 1999).

Finally, we note that the officers conducting the search conformed to the consistent training and advice that they received from federal and state law enforcement authorities. Officers testified at the suppression hearing that they believed their conduct was lawful based upon Drug Enforcement Agency training, police trainings, and conversations with prosecutors. The existence of police training indicating that certain conduct is lawful does not make the conduct such, nor does it prevent a court from exercising the exclusionary rule. A ruling to the contrary would shield officers from punishment even for flagrant misconduct. But, similarly, the fact that the officers received consistent advice from multiple authorities that correctly reflected the unanimous understanding of multiple circuit courts should not be ignored. It again goes

---

[5]Fisher directs our attention to the D.C. Circuit's determination in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), holding that GPS tracking was a Fourth Amendment search. *Maynard* was decided in August 2010, after the search in this case took place, and therefore could not have placed the officers on notice that there was divided precedent on the constitutionality of a GPS search. Additionally, if we were to consider *Maynard*, we would also be obliged to note that both the Fifth and the Eleventh Circuits, after the search in the present case took place but prior to *Jones*, held that a GPS search did not require a warrant. *See United States v. Hernandez*, 647 F.3d 216, 220–21 (5th Cir. 2011); *United States v. Smith*, 387 F. App'x 918, 921 (11th Cir. 2010) (per curiam). Thus, prior to *Jones*, the Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits had all found that the police conduct in the present case was lawful.

to the broader impression that the officers acted in good faith and in justifiable reliance upon the training that they received.

In light of this overwhelming authority, there is no indication in the present case that the police acted in bad faith or that their conduct was "deliberate, reckless, or grossly negligent." *Davis*, 131 S. Ct. at 2427 (internal quotation marks omitted). At the time the police placed the tracking device on Fisher's vehicle, the training and guidance provided to these officers by various police agencies and prosecutors all indicated that such conduct was consistent with the Constitution; no circuit authority had indicated that the use of a GPS tracker was unconstitutional, and three circuits had held that such conduct was lawful; the relevant Supreme Court case law had indicated such a practice was lawful; and our precedent also provided binding authority permitting such conduct. These are not the type of circumstances that warrant the application of the "bitter pill" that is the exclusionary rule. As it is apparent that the police acted in reasonable, good-faith reliance and that their conduct was lawful, the exclusionary rule does not apply.

## III.   CONCLUSION

For the reasons provided above, we **AFFIRM** the district court's denial of Fisher's motion to suppress.