NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0024n.06

No. 13-4343

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 07, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAMIL HARDY, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:   DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. After a loaded firearm fell from defendant Jamil Hardy's waistband while he was being questioned by police on a city street regarding his involvement in a nearby disturbance, Hardy was arrested and charged with being a felon in possession of a firearm. Given the circumstances surrounding the arrest, Hardy chose not to contest the fact that he possessed the weapon and, instead, pleaded guilty to the charged offense. In his plea agreement with the government, however, Hardy specifically reserved the right to challenge on appeal any suppression-hearing determination made by the district court. Hardy now insists that evidence of his possession of the weapon should have been suppressed because the police did not have a reasonable and articulable suspicion that he had been engaged in criminal activity at the time they confronted him. We disagree and thus affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly after 1:30 a.m. on March 28, 2013, the Maple Heights (Ohio) Police Department received "a call about a disturbance at a house on Theodore [Street]." According to the report, a "short black female with glasses" had been knocking loudly on the door of a residence on that street for 15-20 minutes. By the time police arrived at the residence, the woman had left, so police began searching the area to find her. Approximately eight or nine minutes after receiving the report of the call, Sergeant Joseph Mocsiran observed an individual meeting the description of the woman they were seeking no more than two-tenths of one mile from the site of the disturbance. The woman, later identified as Fatima Reed, was accompanied by Hardy when Mocsiran pulled his police cruiser, which was being operated at the time without sirens or emergency lights, alongside the two individuals "to find out if they were the ones involved." Within seconds, Investigator Thomas Halley also drove up in his marked car, also without the emergency lights or siren activated, but with his vehicle's dash camera recording the incident.

Both officers got out and approached Reed, who, when asked, stated that she had indeed been knocking on the door of the residence on Theodore Street and identified Hardy as her "little cousin." She then addressed Hardy as "Jamil" and directed him to "pick my magazines up, baby," and to "just stand right there; they're not going to do nothing to you." During this questioning of Reed, police did not also question Hardy.

As Hardy attempted to leave, an officer instructed Hardy to "hold on." Although Reed had referred to Hardy by his first name, called him "baby," and stated that he was her "little cousin," Hardy told Halley that he did not know the woman with whom he was standing. Consequently, Halley then requested identification from Hardy. Hardy maintained that he did not have any identification with him, and he then announced, "I'm gone," and started to leave.

Halley told him to come back and asked for his name and Social Security number. As Halley transmitted the information Hardy provided in an effort to verify his identification, Hardy reached behind his back, and a gun fell to the ground on the grass between the sidewalk and the street. The officers then arrested Hardy.

Hardy was eventually indicted for being a felon in possession of a firearm after the prosecutor ascertained that he previously had been convicted both of burglary and of assaulting a peace officer. Hardy moved, however, to suppress the evidence seized at the stop, arguing that "the police lacked reasonable suspicion to believe [he] was engaged in criminal activity." The district court conducted an evidentiary hearing on the motion, at which both Mocsiran and Halley testified.

At the conclusion of the hearing, the district court denied the motion to suppress on two alternative bases. First, the district court held that Mocsiran and Halley had reasonable suspicion "to stop the woman who's been identified as Fatima" and "to briefly detain Mr. Hardy. . . . It was 1:45 [a.m.], there weren't a lot of other people around on the street. I find that it was reasonable for the officers to believe that Mr. Hardy was somehow connected to that offense." Alternatively, the district court stated that "even if the officers didn't have a reasonable basis to make a brief stop to find out who Mr. Hardy was, the purposes underlying the exclusionary rule would not apply here to suppress this gun, because the gun was clearly not the product of any search, no frisk."

In light of the district court's ruling that the weapon was admissible into evidence and the uncontroverted evidence of Hardy's prior criminal record, the defendant pleaded guilty to the single felon-in-possession charge in the indictment. Hardy now exercises the right he explicitly

reserved in his plea agreement and challenges the district court's adverse ruling on the suppression motion.

***DISCUSSION***

When reviewing a district court's ruling on a motion to suppress evidence, we examine the court's legal conclusions *de novo* and its factual findings for clear error. *See, e.g.*, *United States v. Fisher*, 745 F.3d 200, 202 (6th Cir.) (citation omitted), *cert. denied*, 135 S.Ct. 676 (2014). In this matter, Hardy and the government do not dispute the relevant facts before the court. Instead, their disagreement focuses solely upon the propriety of the district court's legal conclusion that Mocsiran and Halley had a reasonable and articulable suspicion to detain Hardy for questioning, during which the firearm in Hardy's possession fell to the ground and became plainly visible.

As we have recognized:

> Typically, three levels of encounters between police and citizens are challenged in the courts: (1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.

*United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (citations omitted).

In this case, Hardy does not dispute the fact that his interaction with police began as a "consensual encounter." Instead, he contends that when he made "polite efforts to go about his business" but was stopped from leaving the scene, the officers did not have a "reasonable, articulable suspicion" to detain him further. In this regard, he points out that: (1) the disturbance call made to the police mentioned only a woman, not a man and a woman; (2) the lateness of the hour alone cannot be relied upon to establish grounds for his detention; (3) Hardy's proximity to Reed at the time the officers arrived at the scene of the stop was not sufficient to justify the

resulting detention; (4) Hardy was entitled to leave the area, and his attempt to do so cannot provide justification for a stop; and (5) contrary to Halley's testimony at the suppression hearing, the video did not establish that Hardy appeared nervous or antsy. The district court nevertheless found that the officers could reasonably conclude that Hardy was connected to the disturbance under investigation.

We agree. When viewed in their totality, the circumstances of this case establish that Mocsiran and Halley were justified in detaining both Reed and Hardy in order to gather information from them. Although it is true that the initial police report stated that only a woman was involved in the disturbance, the officers observed Reed, who met the description of the suspect, walking less than one-quarter mile from the residence of the complainant only minutes after the initial call to the police. The police properly effected a limited detention of *Reed* to question her about the incident being investigated.

When Mocsiran questioned Reed, she voluntarily admitted that she indeed was the individual who had been banging on the door of the nearby residence. She then referred to Hardy, standing beside her, by name and announced that he was her "little cousin." At that point, Mocsiran and Halley had reason to suspect that *Hardy*, too, might have been involved in the disturbance. After all, Hardy and Reed were the only two individuals observed on the street at that time, they apparently were acquainted with each other, and they were in close proximity to the scene of the "crime." Thus, because Reed already had admitted that she had been at the site of the disturbance that prompted the call to the police, the officers had reason to question Hardy directly about his identity and his potential involvement. Their suspicion must have increased when Hardy denied that he knew who Reed was and attempted to walk away.

Indisputably, this court and the United States Supreme Court have held that the mere lateness of the hour, the fact that an individual is in the company of another person, or that a person approached by the police attempts to walk away from the encounter cannot, alone, serve as bases for reasonable suspicion that a defendant is, or has been, engaged in criminal activity. *See, e.g.*, *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) (fact that encounter took place at 1:20 a.m., without more, cannot give rise to reasonable suspicion); *United States v. Bell*, 762 F.2d 495, 499 n.4 (6th Cir. 1985) ("proximity cannot be the sole legitimizing factor" in determining the legality of an investigative stop); *United States v. Beauchamp*, 659 F.3d 560, 570 (6th Cir. 2011) ("talking to someone else, without more, is innocent activity"); *Florida v. Royer*, 460 U.S. 491, 498 (1983) (walking away from the police does not create reasonable suspicion). However, as we held in *Beauchamp*, "Certainly there are situations in which innocent acts, taken together, can amount to reasonable suspicion." *Beauchamp*, 659 F.3d at 571 (citing *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989)).

This case involves just such a "totality" situation. Hardy was detained and questioned by the police in this case not only because he was outside after 1:30 a.m., not only because he was in the presence of another person, and not only because he sought to walk away from Halley. Furthermore, the record in this matter makes clear that the police initially were not interested in finding and questioning Hardy. They had been informed that a short, African-American woman with glasses had been disturbing another citizen by persistently pounding on the door of a residence at 1:30 in the morning. Seeing a woman fitting that description on an otherwise-semi-deserted street only minutes later and about two-tenths of a mile away, the officers were justified in seeking information from Fatima Reed. When Reed made it clear to the police that she knew

the person with her and that the person was her cousin, but Hardy denied knowing Reed, the police properly were reasonably suspicious of the second individual as well.

Moreover, we have no problem in concluding that the degree of the pre-arrest intrusion on Hardy's liberty in this case was reasonable. In determining such reasonableness, we first examine whether the detention was "sufficiently limited in time," and then, whether "the investigative means used [were] the least intrusive means reasonably available." *Caruthers*, 458 F.3d at 468 (internal quotation marks and citations omitted). As indicated in the video recording of the encounter between Hardy and the police, neither factor should result in a conclusion that the stop was unreasonable or unconstitutional. The total time elapsed between the officers' exits from their vehicles to speak with Reed and Hardy to the recognition that Hardy had dropped a firearm onto the ground was less than three minutes. Furthermore, at no time before the gun was revealed did Mocsiran or Halley make physical contact with Hardy, confine him, handcuff him, or raise their voices to him. Under such circumstances, the district court did not err in concluding that the degree of intrusion also was reasonable.

## *CONCLUSION*

An examination of the totality of the circumstances in this matter reveals that the police officers had reasonable and articulable suspicion to detain Hardy briefly to question him about a disturbance that had just occurred at a nearby location. Additionally, the restriction on Hardy's liberty was sufficiently limited in scope and duration. We therefore AFFIRM the judgment of the district court in this matter.