**[Cite as *State v. Johnson*, Slip Opinion No. 2014-Ohio-5021, 2014-Ohio-5021.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2014-OHIO-5021**

**THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Johnson,* Slip Opinion No. 2014-Ohio-5021.]**

*Criminal law—Fourth Amendment—Searches—Good-faith exception to the exclusionary rules—GPS tracking device—Binding appellate precedent—Good-faith, objectively reasonable belief that placing GPS tracking device on a vehicle, based on binding appellate precedent, would not have an appreciable effect on deterring violations of the Fourth Amendment.*

(No. 2013-1973—Submitted September 24, 2014—Decided November 13, 2014.)

APPEAL from the Court of Appeals for Butler County,

No. 2012-11-235, 2013-Ohio-4865.

_____

**O'DONNELL, J.**

**{¶ 1}** Sudinia Johnson appeals from a judgment of the Twelfth District Court of Appeals which affirmed his conviction for trafficking in cocaine and held that the good-faith exception to the exclusionary rule permitted the admission of evidence obtained from a global-positioning-system ("GPS")

tracking device that Detective Mike Hackney had placed on Johnson's vehicle without obtaining a search warrant.

{¶ 2} The United States Supreme Court crafted the exclusionary rule to deter violations of the rights guaranteed by the Fourth Amendment to the United States Constitution, but it has recognized that the costs to society outweigh any deterrent benefit of excluding evidence obtained in a search that appeared to police to be constitutional. Thus, in *Davis v. United States,* ___ U.S. ___, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), the court declined to apply the exclusionary rule to a search conducted in objectively reasonable, good-faith reliance on binding appellate precedent that was later overruled. This exception to the exclusionary rule—the good-faith reliance on precedent—is at issue here.

{¶ 3} In October 2008, when Detective Hackney attached a GPS tracking device to Johnson's van, two cases from the United States Supreme Court— *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984)— supported Hackney's objectively reasonable belief that attaching a tracking device to a vehicle did not violate any reasonable expectation of privacy that Johnson had, either in the undercarriage of his van or in his whereabouts while driving on public streets and highways. In addition, Hackney relied in good faith on advice received from an assistant prosecuting attorney, from fellow members of law enforcement, and in training seminars that this practice did not implicate Fourth Amendment protections.

{¶ 4} In *United States v. Jones*, ___ U.S. ___, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), decided four years after Hackney put the GPS tracking device on Johnson's van, the court held that the attachment of such a device to an individual's vehicle is a search within the meaning of the Fourth Amendment. Notwithstanding *Jones*, which clarifies the law going forward, because *Knotts* and *Karo* served as binding appellate precedent to justify placing GPS tracking

2

devices on suspects' vehicles without obtaining a search warrant, the good-faith exception to the exclusionary rule applies, and therefore, exclusion of the evidence obtained by police in this case is not warranted.

{¶ 5} Accordingly, we affirm the judgment of the appellate court.

## Facts and Procedural History

{¶ 6} In October 2008, Detective Hackney of the Butler County Sheriff's Department received information from an informant that Johnson had recently sold multiple kilos of cocaine, that he would soon travel to Chicago to obtain seven more kilos, and that he would transport the cocaine in a van. Hackney had received similar information from two other informants in the six months prior to this, and he knew that Johnson owned a white Chevy van.

{¶ 7} Relying on his understanding that a search warrant was not needed, Hackney did not obtain a warrant before he attached a GPS tracking device to Johnson's van. Rather, on the evening of October 23, 2008, he and two other officers went to Johnson's neighborhood in Hamilton, Ohio, and while the other officers seized Johnson's trash, Hackney located Johnson's van, which was parked on the street, and attached a battery-powered GPS tracking device to its undercarriage. The device was "probably no bigger than a pager" and was sealed in a magnetic case, and it did not need to be hard wired to the van's electrical systems. It permitted Hackney to remotely track and record the van's movements in real time using a secure website.

{¶ 8} The van stayed near Hamilton for five days, but on October 28, 2008, Hackney logged onto the website and located the van in a parking lot at a shopping center in Calumet City, Illinois. He then arranged for Rudy Medellin, a retired Immigration and Customs officer living in the Chicago area, to go to the shopping center and verify that Johnson's van was there.

{¶ 9} Medellin located the van, used the license plate to confirm it belonged to Johnson, and followed it to a nearby residence in Chicago. Medellin

watched Johnson walk out of the residence carrying a package and enter the van. Medellin then saw the garage door open and another man, later identified as Otis Kelly, drive out in a passenger car bearing Ohio license plates. Medellin followed both vehicles as they traveled toward Ohio, and Hackney monitored the van's movements using the GPS device.

{¶ 10} The car and van separated before crossing into Ohio. Hackney directed officers to stop the vehicles "if they were able to find probable cause to make a stop." Deputy Daren Rhoads saw Johnson improperly cross lanes to make a turn and pulled the van over. After officers removed Johnson from the vehicle at gunpoint, he consented to a search of the van, but no drugs were found. Other officers stopped Kelly for following too closely behind another vehicle. A search of Kelly's car revealed a concealed compartment in the trunk; officers used a key from Johnson's key ring to open it and found seven kilograms of cocaine.

{¶ 11} A grand jury indicted Johnson for one count of trafficking in cocaine and one count of possession of cocaine, each with a major-drug-offender specification, as well as one count of having a weapon while under a disability. He moved to suppress the evidence against him, asserting that the warrantless placement and monitoring of the GPS tracking device on his van violated his Fourth Amendment rights.

{¶ 12} At the suppression hearing, Hackney testified that he had attended training seminars on police use of GPS tracking devices and had consulted with assistant prosecutor Dave Kash, fellow officers and supervisors, and other law-enforcement agencies about the legality of using GPS devices. He stated that "it was kind of common knowledge among other drug units or talking to other drug units that as long as the GPS is not hard wired, as long as it is placed on—in a public area, removed in a public area, it is basically a tool or an extension of surveillance."

4

{¶ 13} The trial court denied the motion to suppress. Johnson pleaded no contest to trafficking in cocaine and possession of cocaine with major-drug-offender specifications, and at a bench trial, the court acquitted him of having a weapon while under a disability. The court merged the convictions as allied offenses and imposed an aggregate 15-year sentence.

{¶ 14} The Twelfth District Court of Appeals affirmed the denial of his motion to suppress, holding that the placement of a GPS tracking device on a vehicle is not a search for purposes of the Fourth Amendment. 190 Ohio App.3d 750, 2010-Ohio-5808, 944 N.E.2d 270 (12th Dist.), ¶ 47.

{¶ 15} We accepted Johnson's discretionary appeal. 128 Ohio St.3d 1425, 2011-Ohio-1049, 943 N.E.2d 572. In line with the United States Supreme Court's decision in *Jones*, ___ U.S. ___, 132 S.Ct. 945, 181 L.Ed.2d 911, which held that attaching a GPS tracking device to an individual's vehicle is a search within the meaning of the Fourth Amendment, we vacated the court of appeals' judgment and remanded the matter to the trial court for application of *Jones*. 131 Ohio St.3d 301, 2012-Ohio-975, 964 N.E.2d 426.

{¶ 16} On remand, the trial court found that placing the GPS tracking device on Johnson's van violated the Fourth Amendment. However, it declined to suppress the evidence against Johnson based on the good-faith exception to the exclusionary rule, concluding that "the deterrence benefit [of] exclusion in this case of non-culpable, non-flagrant police conduct does not outweigh the heavy costs of exclusion to society and the judicial system. * * * The Court finds that the officers acted in good faith * * * and the evidence will be admitted at trial."

{¶ 17} Johnson again pleaded no contest to trafficking in cocaine and possession of cocaine with major-drug-offender specifications, and the court merged his convictions as allied offenses and sentenced him to ten years in prison.

{¶ 18} The court of appeals affirmed, applying the good-faith exception in "a case-by-case approach examining the culpability and conduct of law

enforcement." 12th Dist. Butler No. 2012-11-235, 2013-Ohio-4865, 1 N.E.3d 491, ¶ 23. The court explained that "[a]s of October 23, 2008, no court had ruled that the warrantless installation and monitoring of GPS devices on vehicles that remained on public roadways was a violation of the Fourth Amendment," federal circuit courts had upheld the practice, and according to *Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55, Johnson lacked a reasonable expectation of privacy in his movements on public roads. *Id.* at ¶ 26. Thus, based on "the legal landscape," *id.* at ¶ 30, and Hackney's good-faith attempts to determine the legality of attaching a GPS tracking device to a vehicle, the appellate court concluded that law enforcement had not exhibited any culpability in violating Johnson's Fourth Amendment rights, and the good-faith exception to the exclusionary rule therefore precluded suppression of the drug evidence, *id.* at ¶ 31.

{¶ 19} On appeal to this court, Johnson maintains that the United States Supreme Court has not applied the good-faith exception to a police officer's reliance on a single conversation with a prosecutor and the prevailing understanding of law enforcement. He argues that no binding appellate precedent permitted the warrantless use of GPS tracking devices on vehicles in Ohio, and he notes that cases from the Second, Eighth, Tenth, and Eleventh District Courts of Appeals have held that the good-faith exception does not apply in the absence of binding precedent from the appellate district, this court, the Sixth Circuit, or the United States Supreme Court. He emphasizes that the good-faith exception to the exclusionary rule has only been applied when a third party made a mistake that invalidates the search, not, as here, when the officer conducting the search errs, and that there is no evidence that Hackney was even aware of any caselaw supporting his decision to install the GPS tracking device on the van. Johnson argues that the police cannot rely in good faith on nonbinding case authority or a prevailing understanding of the law when the question remains open in the officer's jurisdiction. He also suggests that the Twelfth District has created a new

exception to the exclusionary rule, shifting to him the burden to prove the bad faith of police in order to suppress evidence obtained in violation of the Constitution.

{¶ 20} The state responds that the exclusionary rule is intended only to deter deliberate, reckless, and grossly or systematically negligent police conduct, but at the time of the search, no court had held that the Fourth Amendment required a warrant before a GPS tracking device could be placed on a vehicle. Rather, courts had construed *Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55, which was then binding precedent, to permit the practice. According to the state, the good-faith exception to the exclusionary rule applies, because Hackney, based on consultations with a prosecutor and other police officers, had an objectively reasonable good-faith belief that no warrant was needed, and a reasonable officer could not have foreseen that the Supreme Court would rely on a technical trespass to determine that a search had occurred. And the state asserts that the search was reasonable, claiming no warrant was required to attach the GPS tracking device, because the automobile exception to the warrant requirement permitted a search of the van on a showing of probable cause.

{¶ 21} Accordingly, this case concerns whether the good-faith exception to the exclusionary rule applies in this case to preclude suppression of evidence obtained through the use of a GPS tracking device without first obtaining a warrant.

### Law and Analysis

{¶ 22} The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized.

{¶ 23} The Supreme Court initially construed the Fourth Amendment to protect against searches and seizures of the person and trespasses against private property. It explained in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), that the prohibition against unreasonable searches and seizures protected a person's "indefeasible right of personal security, personal liberty, and private property," *id.* at 630, and it relied on the principle rooted in English common law that " 'every invasion of private property, be it ever so minute, is a trespass,' " *id.* at 627, quoting *Entick v. Carrington,* 95 Eng. Rep. 807 (K.B.1765).

{¶ 24} In *Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), the court continued the focus on the law of trespass when it considered whether an early form of electronic surveillance—a wiretap—was a search or seizure for purposes of the Fourth Amendment when police has not trespassed on or against private property. It explained, "The amendment itself shows that the search is to be of material things—the person, the house, his papers, or his effects," *id.* at 464, not listening to someone's voice, and it concluded that there is no Fourth Amendment violation "unless there has been an official search and seizure of his person or such a seizure of his papers or his tangible material effects or an actual physical invasion of his house 'or curtilage' for the purpose of making a seizure," *id.* at 466. Using wiretaps attached to telephone wires on public streets therefore was not a search, because "[t]here was no entry of the houses or offices of the defendants." *Id.* at 464.

{¶ 25} And applying the trespass doctrine in *Goldman v. United States*, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), the court upheld the police use of a detectaphone to eavesdrop on conversations through the wall of an adjoining

office without trespassing on private property. Thus, as the court later explained in *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), "well into the 20th century, [the court's] Fourth Amendment jurisprudence was tied to common-law trespass."

**{¶ 26}** But over the next 25 years, the court's cases "increasingly discarded fictional and procedural barriers rested on property concepts" and came to "recognize[] that the principal object of the Fourth Amendment is the protection of privacy rather than property." *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

**{¶ 27}** The court revisited the legality of wiretaps in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a case involving the government's use of an electronic listening and recording device attached to the outside of a public telephone booth. The court declared that "the underpinnings of *Olmstead* and *Goldman* have been so eroded by our subsequent decisions that the 'trespass' doctrine there enunciated can no longer be regarded as controlling," *id.* at 353, "[f]or the Fourth Amendment protects people, not places," *id.* at 351. It therefore held that "[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.* at 353.

**{¶ 28}** The court later came to apply the analysis of Justice Harlan's concurrence in *Katz*, which explained that a Fourth Amendment violation occurs when the government invades a person's reasonable expectation of privacy. *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), quoting *Katz* at 360 (Harlan, J., concurring) ("The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy' ").

Knotts *and* Karo

{¶ 29} The Supreme Court applied these standards to the government's use of electronic tracking devices in *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). In that case, officers suspected Tristan Armstrong of purchasing chloroform from the Hawkins Chemical Company in Minneapolis, Minnesota, to manufacture illegal drugs, and with the company's consent, the officers arranged for an electronic beeper to be placed in the next container of chloroform that Armstrong purchased. Using visual surveillance and following radio signals emitted from the beeper, officers followed Armstrong to the home of Darryl Petschen, who then drove the container across the Wisconsin state line and eluded the pursuing agents. However, officers used the signals from the beeper to trace the container to a secluded cabin occupied by Leroy Knotts, and they obtained a search warrant, which disclosed a clandestine drug laboratory in the cabin. The trial court denied Knotts's motion to suppress, but the Eighth Circuit Court of Appeals reversed, concluding that officers had violated Knotts's reasonable expectation of privacy.

{¶ 30} The Supreme Court rejected this analysis, explaining:

A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When Petschen travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.

10

*Id.* at 281-282. Although the court recognized that Knotts had a reasonable expectation of privacy in his cabin, "no such expectation of privacy extended to the visual observation of Petschen's automobile arriving on his premises after leaving a public highway, nor to movements of objects such as the drum of chloroform outside the cabin in the 'open fields.' " *Id.* at 282. The court noted:

> Visual surveillance from public places along Petschen's route or adjoining Knotts' premises would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but on the use of the beeper to signal the presence of Petschen's automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.

*Id.*

{¶ 31} The next year, the Supreme Court decided *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). In that case, Drug Enforcement Administration ("DEA") agents learned that James Karo, Richard Horton, and William Harley had purchased 50 gallons of ether from a government informant in Albuquerque, New Mexico. The informant suspected that the ether would be used to extract cocaine from clothing imported into the United States, and he permitted government agents to install a tracking beeper in one of the containers before Karo picked it up. Using the beeper, agents traced the container to various dwellings, to a specific locker in a commercial storage facility, and then to a self-storage facility. From there, agents observed Gene Rhoads retrieve the containers, and using visual surveillance and the beeper, they followed his

truck to a house in Taos, New Mexico. Officers watched this building and used the beeper to confirm that the container remained inside, but when they observed the windows open on a cold, windy day, they believed that the ether was being used. The agents then obtained a warrant, and a search disclosed cocaine and laboratory equipment inside.

{¶ 32} The government indicted Karo, Horton, Harley, Rhodes, Michael Steele, and Evan Roth, but the trial court suppressed the drug evidence on the grounds that the initial warrant to install the beeper was invalid. The Ninth Circuit Court of Appeals held that a violation of the Fourth Amendment occurred when the can with the beeper was transferred to Karo, not when the beeper was placed in the can.

{¶ 33} On review, the Supreme Court held that the installation of the beeper had not violated any Fourth Amendment interest of the suspects:

> The can into which the beeper was placed belonged at the time to the DEA, and by no stretch of the imagination could it be said that respondents then had any legitimate expectation of privacy in it. The ether and the original 10 cans, on the other hand, belonged to, and were in the possession of, [the informant], who had given his consent to any invasion of those items that occurred.

*Id.* at 711. The court emphasized that no search had occurred, because the transfer of the container of ether conveyed no information that the suspect intended to keep private. Nor had a seizure occurred:

> Although the can may have contained an unknown and unwanted foreign object, it cannot be said that anyone's possessory interest was interfered with in a meaningful way. At most, there was a

technical trespass on the space occupied by the beeper. The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation.

*Id.* at 712-713.

{¶ 34} The constitutional violation occurred, the court explained, because DEA agents had monitored the beeper while it was in places not open to visual surveillance, "reveal[ing] a critical fact about the interior of the premises that the Government is extremely interested in knowing and that it could not have otherwise obtained without a warrant. * * * [T]he monitoring indicated that the beeper was inside the house, a fact that could not have been visually verified." *Id*. at 715. It concluded, "Indiscriminate monitoring of property that has been withdrawn from public view would present far too serious a threat to privacy interests in the home to escape entirely some sort of Fourth Amendment oversight. * * * In sum, we discern no reason for deviating from the general rule that a search of a house should be conducted pursuant to a warrant." *Id.* at 716-718.

*Warrantless Use of GPS Tracking Devices*

{¶ 35} Although GPS tracking devices rely on different technology than electronic beepers, courts nonetheless applied the principles articulated in *Knotts* and *Karo* in determining whether the use of such a device implicated the protections of the Fourth Amendment.

{¶ 36} In *United States v. McIver*, 186 F.3d 1119 (9th Cir.1999), *overruled in part by United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir.2012), the Ninth Circuit Court of Appeals rejected the argument that evidence obtained following use of a GPS device to track McIver's vehicle should be

suppressed because police committed a trespass in attaching the unit, and it held that McIver had no reasonable expectation of privacy in the undercarriage of his vehicle. Similarly, the Seventh Circuit Court of Appeals in *United States v. Garcia*, 474 F.3d 994 (7th Cir.2007), cited *Knotts* and *Karo* in support of its conclusion that attaching a GPS device to a vehicle did not constitute a search or a seizure. State courts also determined that the warrantless use of a GPS device to track a suspect did not violate Fourth Amendment protections. *See, e.g., Stone v. State*, 178 Md.App. 428, 448, 941 A.2d 1238 (2008); *People v. Weaver*, 52 A.D.3d 138, 141-142, 860 N.Y.S.2d 223 (2008)*, reversed on state law grounds,* 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195 (2009); *State v. Jackson*, 111 Wash.App. 660, 688, 46 P.3d 257 (2002), *aff'd,* 150 Wash.2d 251, 76 P.3d 217 (2003); *People v. Zichwic*, 94 Cal.App.4th 944, 956, 114 Cal.Rptr.2d 733 (2001).

{¶ 37} And even after Hackney attached the GPS tracking device to Johnson's van in October 2008, courts continued to hold that the Fourth Amendment did not require police to obtain a warrant before using a GPS device to track a suspect's vehicle. *See, e.g., United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir.2011); *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir.2010); *United States v. Smith*, 387 Fed.Appx. 918, 921 (11th Cir.2010).

{¶ 38} Only the District of Columbia Circuit Court of Appeals' decision in *United States v. Maynard*, 615 F.3d 544, 555 (D.C.Cir.2010)—entered almost two years *after* the use of the GPS device in this case—broke this consensus and concluded that police must obtain a warrant before using a GPS device to track a suspect's "movements 24 hours a day for 28 days as he moved among scores of places, thereby discovering the totality and pattern of his movements from place to place to place." *Id.* at 558. And even there, the court distinguished *Knotts* based only on the extensive duration of surveillance in that case.

{¶ 39} The Supreme Court agreed to review the decision in *Maynard* in *Jones*, ___ U.S. ___, 132 S.Ct. 945, 181 L.Ed.2d 911, but rather than apply the

*Katz* standard and consider whether the government violated the accused's reasonable expectation of privacy, the court returned to the earlier Fourth Amendment jurisprudence that was tied to common-law trespass, noting that "for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates. *Katz* did not repudiate that understanding." *Id.* at 950. The court therefore concluded, "The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id*. at 949. Thus, when police attach a GPS tracking device to a suspect's vehicle, it is a search implicating the protections of the Fourth Amendment.

### *The Exclusionary Rule and the Good-Faith Exception*

**{¶ 40}** In *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the Supreme Court announced the exclusionary rule, barring the use of evidence secured by an unconstitutional search and seizure, and it extended the exclusionary rule to the states in *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But exclusion of evidence for a violation of the Fourth Amendment "is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Davis,* __U.S.__, 131 S.Ct. at 2426, 180 L.Ed.2d 285, quoting *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rather, as the court explained in *Davis*, the exclusionary rule's "sole purpose * * * is to deter future violations of the Fourth Amendment," *id.* at 2426, and "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly * * * unwarranted' " (ellipsis sic), *id.* at 2427, quoting *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

**{¶ 41}** In *Davis*, the court considered whether to apply the exclusionary rule when the police conduct a search in compliance with binding precedent that is later overruled. Police arrested Stella Owens for driving while intoxicated and Willie Davis, a passenger, for giving a false name, and officers relied on the Eleventh Circuit's interpretation of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), to search the passenger compartment of Owen's vehicle. The officers found a firearm in Davis's coat pocket, which resulted in his conviction on a federal firearms charge. During the pendency of Davis's appeal, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which limited *Belton* and adopted a new rule under which the search of an automobile incident to an arrest is constitutional only if genuine safety or evidentiary concerns justify the search. Applying *Gant*, the Eleventh Circuit determined that the search of the vehicle violated Davis's Fourth Amendment rights, but it declined to apply the exclusionary rule and upheld his conviction.

**{¶ 42}** The Supreme Court affirmed, noting that exclusion "exacts a heavy toll on both the judicial system and society at large": it "requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence" and often "suppress[es] the truth and set[s] the criminal loose in the community without punishment." *Davis* at 2427. However, the court recognized that "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.*, quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). But the deterrent value of exclusion does not outweigh its costs "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Id.*, quoting *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The court therefore applied the good-faith exception and held that "searches conducted

16

in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423-2424.

*Application*

**{¶ 43}** In the aftermath of *Jones*, police officers can no longer harbor a good-faith belief that attaching a GPS tracking device to a vehicle is not a search for purposes of the Fourth Amendment. Nonetheless, at the time Detective Hackney attached the GPS device to Johnson's van, he acted with an objectively reasonable good-faith belief that his actions comported with the Fourth Amendment.

**{¶ 44}** The evidence shows that Hackney had a good-faith belief that he did not need to obtain a warrant before placing the GPS device on Johnson's vehicle, because he relied on advice he had received from an assistant prosecuting attorney and fellow members of law enforcement and on information he had received during training seminars. *See United States v. Katzin*, 769 F.3d 163, 181, 2014 WL 4851779 (3d Cir.2014) (en banc) (noting that agents had consulted with an Assistant United States Attorney and followed "[Department of Justice] policy at the time that a warrant was not required to install a battery-powered GPS on a vehicle parked on a public street and to surveil it on public roads"). There is no indication that Hackney ever had reason to question the lawfulness of his actions.

**{¶ 45}** Further, the belief that his actions were lawful was objectively reasonable. At the time he attached the GPS tracking device to Johnson's van, binding appellate precedent from the United States Supreme Court in *Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55, and *Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530, had suggested that Johnson lacked a reasonable expectation of privacy in either the undercarriage of his van or in his movements on public roads and highways that were visible to members of the public, and *Karo* had stated that "an actual trespass is neither necessary nor sufficient to

establish a constitutional violation." *Id.* at 713. In addition, decisions from the Seventh and Ninth Circuits had relied on *Knotts* and *Karo* to hold that police could attach a GPS tracking device to a suspect's vehicle without a warrant. Thus, as the Sixth Circuit recently explained, "pre-*Jones* cases, authorizing the use of tracking devices like beepers, provided binding authority for the warrantless use of GPS trackers. As such, officers relying on these earlier cases were still within the scope of the good-faith safe harbor, even though the technology described by the cases was not exactly the same." *United States v. Fisher*, 745 F.3d 200, 205 (6th Cir.2014). And that analysis is applicable here.

{¶ 46} Other cases decided after *Jones* have also recognized that it was objectively reasonable for police officers to conclude that installing a GPS tracking device did not implicate any Fourth Amendment right. *See, e.g.*, *Katzin*, 769 F.3d at 182 (explaining that *Knotts* and *Karo* provided "hornbook law" on electronic surveillance of vehicles, and agents thus had no reason to believe that installing and monitoring a GPS tracking device was illegal); *United States v. Aguiar*, 737 F.3d 251, 262 (2d Cir.2013) ("sufficient Supreme Court precedent existed at the time the GPS device was placed for the officers here to reasonably conclude a warrant was not necessary"); *United States v. Stephens*, 764 F.3d 327, 337 (4th Cir.2014) ("use of the GPS was objectively reasonable because of the binding appellate precedent of *Knotts*"); *Kelly v. State*, 436 Md. 406, 426, 82 A.3d 205 (2013) ("before *Jones,* binding appellate precedent in Maryland, namely *Knotts,* authorized the GPS tracking of a vehicle on public roads").

{¶ 47} And it is significant that the Supreme Court's decision in *Jones* unexpectedly departed from the framework established by *Katz,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, when it relied on the property-law based approach barring government trespasses against personal effects that *Katz* had rejected. *Karo* suggested that attaching the GPS tracking device to the undercarriage of the van would not constitute a search or seizure, because although a "technical

trespass," it had not interfered with Johnson's possessory interest in the van in any meaningful way. 468 U.S. at 712, 104 S.Ct. 3296, 82 L.Ed.2d 530. And *Knotts* suggested that monitoring the van's location did not amount to a search, because an occupant of a vehicle lacks a reasonable expectation of privacy in his whereabouts while driving on public streets and highways. But "*Jones* fundamentally altered this legal landscape by reviving—after a forty-five year hibernation—the Supreme Court's prior trespass theory." *Katzin*, 769 F.3d at 181.

**{¶ 48}** As the Sixth Circuit noted in *Fisher*, "[a] reasonable officer would not have been able to anticipate this shift in the Supreme Court's Fourth Amendment jurisprudence," 745 F.3d at 204, fn. 4, and the good-faith exception should be applied "where new developments in the law have upended the settled rules on which the police relied," *United States v. Sparks*, 711 F.3d 58, 68 (1st Cir.2013).

### Conclusion

**{¶ 49}** Prior to the Supreme Court's decision in *Jones*, its opinions in *Knotts* and *Karo* provided binding appellate precedent in this state to support the objectively reasonable conclusion that placing a GPS tracking device on a suspect's vehicle did not implicate any protections of the Fourth Amendment. Searches conducted in objectively reasonable, good-faith reliance on this binding appellate precedent are therefore not subject to the exclusionary rule, even though hindsight subsequently reveals that reliance to have been misplaced.

**{¶ 50}** Here, Detective Hackney acted with a good-faith, objectively reasonable belief that it would not violate Johnson's Fourth Amendment rights to attach a GPS tracking device to the undercarriage of his van, based on the state of the law in October 2008. Suppression of the evidence obtained as a result of the GPS device would have no appreciable effect in deterring violations of the Fourth

Amendment, and therefore the good-faith exception to the exclusionary rule applies in these circumstances.

{¶ 51} For these reasons, the judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, and O'NEILL, JJ.

PFEIFER and LANZINGER, JJ., concur in judgment only.

———————————

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael A. Oster Jr. and Lina N. Alkamhawi, Assistant Prosecuting Attorneys, for appellee.

Arenstein & Gallagher, William R. Gallagher, and Elizabeth Conkin, for appellant.

Michael DeWine, Attorney General, and Eric E. Murphy, State Solicitor, urging affirmance for Ohio Attorney General Michael DeWine.

Gregg Marx, Fairfield County Prosecuting Attorney; Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney; and Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Chief Counsel, Appellate Division, urging affirmance for amici curiae Prosecuting Attorneys Association, Fairfield County Prosecuting Attorney, Cuyahoga County Prosecuting Attorney, and Franklin County Prosecuting Attorney.

Pinales, Stachler, Young, Burrell & Crouse Co., L.P.A., and Candace C. Crouse, urging reversal for amicus curiae National Association of Criminal Defense Lawyers.

———————————