[Cite as *State v. McRae*, 2018-Ohio-3435.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 17-17-23

v.

TROY D. MCRAE, JR.,

    O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Shelby County Common Pleas Court**
**Trial Court No. 17CR000106**

**Judgment Affirmed**

**Date of Decision: August 27, 2018**

APPEARANCES:

    *Ralph A. Bauer* **for Appellant**

    *Anne K. Bauer* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Troy D. McRae Jr. ("McRae") brings this appeal from the judgment of the Court of Common Pleas of Shelby County finding him guilty of aggravated murder and sentencing him to prison term of life in prison with a chance for parole after 30 years. On appeal McRae claims that the trial court erred by 1) denying his motion to dismiss; 2) not including a lesser included offense of voluntary manslaughter in the jury instructions; and 3) violated McRae's speedy trial rights. McRae also claims that he was denied the effective assistance of counsel. For the reasons set forth below, the judgment of the Court of Common Pleas of Shelby County is affirmed.

{¶2} On March 30, 2017, the Shelby County Grand Jury indicted McRae on one count of aggravated murder in violation of R.C. 2903.01(B). Doc. 1. The indictment also included a specification that McRae was a repeat violent offender. *Id.* On April 6, 2017, counsel for McRae filed a motion for a bill of particulars, a request for discovery, a notice of demand for testimony, and a request for notice of intention to use evidence. Doc. 20-23. The State provided its notice of intention to use evidence in answer to McRae's request on April 11, 2017. Doc. 39. A trial was scheduled for June 5, 2017. Doc. 52.

{¶3} On May 19, 2017, counsel for McRae filed a motion to continue the jury trial. Doc. 62. Included in the motion was notice that McRae did not consent to a waiver of his speedy trial rights. *Id.* However, counsel for McRae consented

on his client's behalf for the purpose of trial preparation. *Id.* A hearing was held on this request. Doc. 69. The trial court granted the motion to continue on May 22, 2019, noting that the continuance was granted over the objection of McRae. *Id.* On June 5, 2017, McRae filed a pro se motion for a bill of particulars. Doc. 86. McRae then filed on June 7, 2017, a pro se motion for dismissal of the charges. Doc. 87. The trial court dismissed the motion as being improperly filed on that same day. Doc. 89. Counsel for McRae filed on June 7, 2017, a request for disclosure of evidence related to the DNA testing. Doc. 88. The trial court granted this request on the next day. Doc, 91. On June 13, 2017, the trial court scheduled the jury trial for September 11, 2017. Doc. 105.

{¶4} On June 19, 2017, McRae filed a pro se motion requesting that his case be dismissed for speedy trial violations. Doc. 111. The trial court struck this motion as improperly filed on June 26, 2017. Doc. 113. On August 8, 2017, counsel for McRae filed a motion to suppress. Doc. 157. A hearing on the motion was held on August 17, 2017. Doc. 179. Counsel for McRae then filed a supplemental memorandum in support of its motion to suppress on August 21, 2017. Doc. 184. The State filed its response to the motion on August 24, 2017. Doc. 192. On September 5, 2017, the trial court entered its decision overruling the motion to suppress. Doc. 208. The trial court held that although there was not probable cause to issue the warrant, the officers relying on the warrant had a good faith exception for execution of the warrant. *Id.*

{¶5} A jury trial was commenced on September 11, 2017. Doc. 228. At the conclusion of the trial, the jury returned a verdict of guilty on the charge of aggravated murder. Doc. 228. A sentencing hearing was held on November 7, 2017. Doc. 254. The trial court sentenced him to serve 30 years to life in prison for the aggravated murder with an extra 10 years in prison for the finding that McRae was a repeat violent offender. *Id.* Counsel for McRae filed a notice of appeal from this judgment. Doc. 264. On appeal, McRae raises the following assignments of error.

**First Assignment of Error**

**The trial court erred in denying [McRae's] motion to dismiss.**

**Second Assignment of Error**

**[McRae's] trial counsel rendered ineffective assistance of counsel in violation of [McRae's] constitutional rights.**

**Third Assignment of Error**

**Trial court erred in not granting [McRae's] request for a lesser included jury instruction of voluntary manslaughter [R.C. 2903.03], a felony of the first degree issue presented for review.**

**Fourth Assignment of Error**

**[McRae] was denied his statutory and constitutional right to a speedy trial.**

*Motion to Suppress and Dismiss*

{¶6} McRae claims in the first assignment of error that the trial court erred by not granting his motion to suppress and by failing to dismiss the charges against

him. Specifically, McRae claims that the arrest warrant was faulty. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9–14–19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.** ***State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (1997).**

*State v. Wooten*, 3d Dist. Marion No. 9-15-46, 2016-Ohio-6980, 72 N.E.3d 56, ¶ 4.

{¶7} The State at the suppression hearing presented the testimony of Captain Jerry Tangeman ("Tangeman"), Sergeant Robert Jameson ("Jameson"), and Bonnie Gold ("Gold"). Tangeman testified that he prepared a complaint for aggravated murder and had his signature notarized. Tr. 8-9. At that time, Jameson prepared the written narrative to accompany the complaint. Tr. 10-12. Tangeman then gave the complaint and narrative to Gold for her review. Tr. 10. Gold did not take any statement under oath and Tangeman did not speak with her about the facts of the case. Tr. 22. Twenty to thirty minutes later, Gold returned with the completed warrant. Tr. 23.

**{¶8}** Jameson testified that he prepared the probable cause narrative and reviewed it with Tangeman. Tr. 39. Although he was present when Gold came to get the paperwork, he did not speak to her and did not provide any additional information. Tr. 42. Once the warrant was returned, he entered it into the system and notified the Lima Police Department that the warrant was received and they could proceed with the arrest. Tr. 34-38.

**{¶9}** Gold testified that she is employed as the Clerk-Court Administrator of the Sidney Municipal court and that she reviews the complaint and narrative before signing off on warrants. Tr. 44-45. She went through her checklist to insure that the complaint met the probable cause requirements. Tr. 46. After determining there was probable cause, she opened a new case in the system, printed the warrant, signed it, and sealed it. Tr. 49-50. Gold then returned the warrant to the police department for them to enter it into the LEADS system. Tr. 50. Gold admitted upon cross-examination that she did not witness the signing of the complaint or take any sworn testimony herself. Tr. 55. She also admitted that she was not aware that Tangeman had not prepared the narrative. Tr. 59.

**{¶10}** Following the testimony, the trial court determined that the narrative was not a sworn statement as required by the criminal rules. Doc. 208. The trial court determined that the narrative was not in the correct format and could not be considered. *Id.* "Accordingly, it is the opinion of this court that although the [probable cause] narrative contained sufficient facts to support probable cause, it

could not be considered by Gold since it was not sworn either in the PC narrative itself or in a reference to the PC narrative in the sworn complaint." *Id.* The trial court then determined that since the complaint only contained conclusionary language without facts to support probable cause, no probable cause was present to support the warrant. *Id.*

**{¶11}** The next question before the trial court was whether the exclusionary rule should be applied in this case. The exclusionary rule bars the use of evidence obtained in an unconstitutional manner. *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, ¶ 40. However, the sole purpose of the exclusionary rule "is to deter future violations of the Fourth Amendment". *Id.* When there will be no appreciable deterrence from its application, the exclusionary rule should not be used. *Id.* The deterrent value of the exclusionary rule should not be used when the police act with an objectively reasonable good-faith belief that what they are doing is lawful. *Id.* at ¶ 42 citing *United State v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**{¶12}** Here the trial court then determined there was a good faith exception to the exclusionary rule. *Id.*

> **In this case, law enforcement submitted to Gold what they believed to be sufficient evidence to support a probable cause determination and the issuance of a warrant. Gold, the evidence demonstrates, acted as an independent, neutral officer including using a checklist to satisfy probable cause. The warrant was then issued and presented to law enforcement. The fact that a warrant had been issued was entered into LEADS. Lima police authorities**

> **relied upon the LEADS information to conduct the arrest. Certainly, Lima police officers would have had no information available to them questioning the issuance of the warrant. For all of these reasons, this court is of the opinion that both the Sidney Police Department in obtaining the warrant and the Lima Police Department in executing the arrest acted in good faith. Indeed, except for the failure of Capt. Tangeman to obtain or swear to the PC narrative this issue would likely not be before the court. Therefore, the photographs taken of the defendant should not be suppressed.**

*Id*. at 4. A review of the record shows that although Tangeman erroneously thought that the narrative was included in the sworn complaint without a reference to it or a separate sworn statement as to the narrative, there was no disregard for the Fourth Amendment rights of McRae. The narrative did provide facts upon which a reasonable officer could rely to determine that the warrant was justified. Additionally, the Lima Police Department could reasonably rely upon the entrance of the warrant into the LEADS system to form a good faith belief that the arrest of McRae was lawful. The good-faith exception to the exclusionary rule applies in this case. The first assignment of error is overruled.

*Ineffective Assistance of Counsel*

{¶13} In the second assignment of error, McRae claims he was denied the effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually**

> **employed.  "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client.  Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.** *See Vaughn v. Maxwell* **(1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164;** *State v. Jackson***, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905.  "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 20.

{¶14} McRae cites multiple reasons for claiming that his trial counsel was ineffective.  The first was that counsel failed to file notice of alibi or to have the alibi witnesses testify at trial.  This issue was previously addressed by this court in *State v. Fritz*, 3d Dist. Seneca No. 13-06-39, 2007-Ohio-3138.  In *Fritz*, the appellant claimed that his counsel was ineffective for failing to file notice of an alibi and to call the alibi witnesses to testify.  This court found it was not ineffective assistance of counsel.

> **Generally, a trial counsel's decision whether to call a particular witness falls within the rubric of trial strategy, and will not be second guessed by a reviewing court. * * * Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. * * * Trial counsel may have employed a reasonable trial strategy in this case by choosing not to call these potential alibi witnesses if, for example, counsel determined that the witnesses lacked credibility and would not assist the defense. * * *Indeed, unreliable witnesses can harm a defendant who offers their testimony in evidence.**

*Id.* at ¶ 39. Here, McRae merely indicates that the witnesses would have testified that he was at a different location when the murder occurred. McRae's step-mother testified that the week immediately following the murder, she saw an injury to McRae's left hand. Tr. 445. The coroner testified that the injuries of the victim came from a left-handed assailant. Tr. 464, 467. Aisha Martin ("Martin") testified that McRae was her boyfriend and lived with her. Tr. 542. The Thursday after the murder, he had her take him to Lima and dropped him off at the McDonalds. Tr. 543. McRae had told her that he got into a "tussle" with the victim and had stabbed the victim, killing him. Tr. 544. Martin also testified that McRae was left handed and after the day of the murder she observed he had an injury to his left hand. Tr. 545. McRae told Martin that he was injured while he was stabbing the victim. Tr. 545. Timothy Augsback ("Augsback") testified that he is a forensic scientist in the DNA section of BCI. Tr. 580-81. Augsback testified that the blood found on the door knob of the victim's home likely came from McRae. Tr. 589. The blood found on the kitchen sink of the victim's home also likely came from McRae. Tr. 591.

The blood found on the victim's medicine cabinet was also consistent with that of McRae. Tr. 592. Given the testimony of Martin and Augsback indicating that McRae was likely present at the scene, counsel for McRae may have determined that the alibi testimony was not credible and not helpful to McRae's case. The record is devoid of any evidence to indicate that it would have changed the outcome of the case.

{¶15} Similarly, McRae claims that his trial counsel was deficient for not calling its own DNA expert. As discussed above, the determination whether to call a witness is a matter of trial strategy. The record contains nothing to indicate that the testimony of the expert would have been helpful. This court finds no basis for determining that calling the expert would have affected the outcome of the trial.

{¶16} Finally, McRae claims that his counsel was not qualified to represent him in a felony case and points to Ohio Administrative Code § 120-1-10, which sets standards for appointed counsel in order to qualify for state reimbursement through the public defender's office. The code sets forth training and experience requirements for attorneys who accept appointments to represent defendants in felony cases. However, OAC 120-1-10(Q) provides that an "attorney employed full-time by a public defender office that meets all applicable standards and guidelines promulgated pursuant to Chapter 120 of the Revised Code and all requirements of rule 120-1-06 of the Administrative Code, is exempted from the qualification requirements of this section." Trial counsel in this matter were

employed by the Shelby County Public Defender's Office. No allegation is made that the Public Defender's Office did not comply with OAC 120-1-06. Additionally, the record does not contain any evidence that the attorneys in question did not have the requisite training. For all of the above reasons, the second assignment of error is overruled.

*Lesser Included Offense*

{¶17} McRae alleges in the third assignment of error that the trial court erred by not instructing the jury on voluntary manslaughter. Voluntary manslaughter is not a lesser included offense of aggravated murder, but is instead an inferior degree of aggravated murder. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). "[T]he test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought." *Id.* The instruction is appropriate when the evidence presented would reasonably support both an acquittal on the murder charge and a conviction for voluntary manslaughter. *Id*.

> **"When the evidence presented at trial going to a lesser included offense (or inferior-degree offense) meets this test, the trial judge must instruct the jury on the lesser (or inferior-degree) offense. * * * On the other hand, when the evidence presented at trial does not meet this test, a charge on the lesser included (or inferior-degree) offense is not required.**

*Id*. This means that "when sufficient evidence is presented which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense, the instruction on voluntary manslaughter should be given. *Id*. at 632-33.

{¶18} Here, McRae was charged with aggravated murder in violation of R.C. 2903.01(B). To be convicted of this offense, the State had to prove that McRae 1) purposely, 2) caused the death of another, 3) while committing or attempting to commit a robbery. To be convicted of voluntary manslaughter in violation of R.C. 2903.03(A), the State would need to prove that McRae 1) while under the influence of sudden passion or rage, 2) brought on by serious provocation from the victim, 3) knowingly, 4) caused the death of another. When determining whether there was adequate mitigating circumstances of provocation, a court must look into both the objective and subjective aspects of the facts. *Shane, supra* at 634.

> **An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the "* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *" must be considered. * * * If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of**

-13-

**the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.**

*Id*.

{¶19} McRae argues that because there was testimony that he was in fear of the victim when he stabbed him, he meets the definition of voluntary manslaughter and was entitled to such an instruction. However, "fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack,* 82 Ohio St.3d 198, 201, 1998-Ohio-375, 694 N.E.2d 1328. Fear for one's own safety is a self-defense issue, not a showing of sudden passion or a fit of rage. *State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 41. A review of the record shows that while McRae presented some evidence that he was afraid of the victim, there was no evidence presented that there was a serious provocation from the victim that would cause a reasonable person to react with sudden passion or rage. Thus, the evidence does not support McRae's argument that the trial court should have instructed the jury on voluntary manslaughter. The third assignment of error is thus overruled.

*Speedy Trial*

{¶20} Finally, McRae alleges in his fourth assignment of error that his speedy trial rights were violated. Both the United States Constitution and the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. *State v. Baker*, 78 Ohio St.3d 108, 110, 1997–Ohio–229, 676 N.E.2d 883. Additionally,

R.C. 2945.71 through 2945.73 provide specific time requirements in which the state must bring an accused to trial. The Ohio speedy-trial statute is mandatory and must be construed strictly against the state. *State v. Steinke*, 158 Ohio App.3d 241, 2004–Ohio–1201, 814 N.E.2d 1230, ¶ 5. R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending must be brought to trial within 270 days from the date of arrest, not including the date of his arrest. *State v. Masters*, 172 Ohio App.3d 666, 670, 2007–Ohio–4229, 876 N.E.2d 1007, ¶ 9. When an accused is held in jail in lieu of bail on the pending charge, each day is counted as three days. *Id*. and R.C. 2945.71(E).

{¶21} An appellate court's review of speedy trial issues involves a mixed question of law and fact. *State v. Hayman*, 3d Dist. Seneca No. 13-09-11, 2010-Ohio-1264. "A reviewing court must give due deference to the trial court's findings of facts if they are supported by competent credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case." *Masters, supra* at ¶ 11.

{¶22} Here, McRae was arrested on March 22, 2017, and remained in jail pending trial. He was charged with a felony, so pursuant to R.C. 2945.71(C), the State had 90 days to bring him to trial. This puts the deadline at June 20, 2017. The trial was not held until September 11, 2017. However, before the deadline had passed, a waiver of speedy trial rights was requested by counsel for McRae to allow for trial preparation. Generally an accused may waive his constitutional right to a

speedy trial. *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987). "[A] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *State v. McBreen*, 54 Ohio St.2d 315, 320, 376 N.E.2d 593 (1978).

**{¶23}** In this case, McRae's trial started on September 11, 2017, which was 140 days after he was taken into custody. However, on May 19, 2017, counsel for McRae filed a motion to continue along with a waiver of the speedy trial rights. A hearing was held on the motion and McRae made his objections known.[1] Counsel indicated that the additional time was needed because 1) it was a serious charge, 2) evidence such as the coroner's report and the DNA results were not available with less than a month before the trial, 3) McRae had disclosed a potential alibi witness who had yet to be interviewed, and 4) discovery was still outstanding with not all witnesses identified. Doc. 62. Based upon these issues, counsel indicated that he could not have an adequate, competent defense prepared for McRae by the trial date. *Id*. The trial court granted the motion noting that McRae had voiced his objections to the request. Doc. 69. After the arguments were made, the trial court made the following determination. "Considering the nature of the offense charged i.e. Aggravated Murder, the complexity of trying such a case, the need of defense

---

[1] No transcript of the hearing was provided, so the exact arguments are not available for this court to review.

counsel to review completely and prepare defenses to all the scientific evidence, the court believes that the motion of defense counsel is in the [best] interests of the defendant and the motion should be granted even though the defendant objects." *Id*. Since McRae is bound by the waiver of speedy trial rights by his counsel pursuant to the holding in *McBreen*, he is not entitled to have the case discharged for failure of the trial beginning within 90 days of his arrest.

{¶24} McRae also argues that he revoked his waiver by filing his pro se motion to dismiss for a speedy trial violation on June 19, 2017. At the time of the motion, McRae was represented by counsel.

> **In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously.**

*State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. At no time did McRae ask to have his counsel removed. Thus, the trial court correctly determined that McRae's pro se motion should be struck because McRae was represented by counsel. Based upon the above reasons, the fourth assignment of error is overruled.

{¶25} Having found no error in the particulars assigned and argued, the judgment of the Court of common Pleas of Shelby County is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**